Marc L. Godino (State Bar No. 182689)
Email: mgodino@glancylaw.com
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 9160

Rosemary M. Rivas (State Bar No. 209147)
Email: rrivas@zlk.com
Kevin Landau (pro hac vice forthcoming)
Email: klandau@tcllaw.com
**LEVI & KORSINSKY, LLP**
44 Montgomery Street, Suite 650
San Francisco, California 94104
Telephone: (415) 373-1671
Facsimile: (415) 484-1294

*Counsel for Plaintiff Diana Vallarta
and Lisa Salmons*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DIANA VALLARTA and LISA SALMONS, on behalf of themselves and all others similarly situated,<br><br>  Plaintiffs,<br>v.<br><br>UNITED AIRLINES, INC.,<br><br>  Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Diana Vallarta and Lisa Salmons ("Plaintiffs") individually on behalf of themselves and all those similarly situated, bring this class action lawsuit against Defendant United Airlines, Inc. ("United"), based upon personal knowledge as to themselves, the investigation of its counsel, and on information and belief as to all other matters.

## I. INTRODUCTION

1. This proposed class action concerns monetary damages that Plaintiffs and consumers residing nationwide have suffered as a result of purchasing travel insurance through Defendant's website. As noted in more detail below, Defendant's website encourages ticket purchasers to protect their trip with travel insurance provided by Allianz or the Travel Guard Group (depending on when the insurance was purchased)—third-party insurers that have partnered with United to offer travel insurance exclusively through United's website. United does not disclose, however, that it has a financial interest in the travel insurance and, in fact, receives an illegal kickback from the insurer in exchange for brokering the insurance sale. Plaintiffs alleges that Defendant's website misled them into paying for the cost of that illegal kickback, and that Defendant is therefore liable for these damages, among other things.

2. In light of the above, Plaintiffs bring claims for unjust enrichment, violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. and for violations of the Connecticut Unfair Trade Practices Act.[1]

## II. PARTIES

3. Plaintiff Diana Vallarta is a resident of San Jose and citizen of California. She purchased trip insurance from United's website at www.united.com on September 28, 2018.

4. Plaintiff Lisa Salmons is a resident of Stamford, Connecticut. She purchased trip insurance from United's website at www.united.com on August 7, 2017.

5. Defendant United Airlines, Inc. is a Delaware corporation with its principal place of business in Chicago, Illinois. United is not licensed under any state laws, including California and Connecticut, to solicit, negotiate, transact or effect contracts of insurance.

---

[1] Conn. Gen. Stat. Ann. § 42-110b (West).

III. **JURISDICTION AND VENUE**

6. This Court has jurisdiction over this Action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because members of the proposed Classes are citizens of states different from Defendant's home state, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

7. In addition, under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law claims because all the claims are derived from a common nucleus of operative facts and are such that Plaintiffs ordinarily would expect to try them in one judicial proceeding.

8. This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction.

9. This Court has personal jurisdiction over Defendant pursuant to 18 U.S.C. § 1965(d) because it is found, has agents, or transacts business in this District.

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (c)(2) because Defendant's contacts are sufficient to subject it to personal jurisdiction in this District, and therefore, Defendant resides in this District for purposes of venue, or under 28 U.S.C. § 1391(b)(2) because certain acts giving rise to the claims at issue in this Complaint occurred, among other places, in this District.

IV. **FACTUAL ALLEGATIONS**

  A. **United receives illegal kickbacks/commissions from the travel insurers that United promotes on its website.**

11. Travel or trip insurance essentially covers any added costs or lost payments that an individual might incur while on a trip or planning a trip. For example, if a consumer is forced at the last minute to switch or cancel a flight, then travel insurance will cover any flight-switching fees or—if necessary—the otherwise-lost cost of the flight.

12. Almost every state in the nation requires insurance agents operating within their borders to be licensed, which allow states to ensure—among other things—that the agent is subject to regulation; that the agent helps bear the cost of that regulation; and that the agent is sufficiently qualified to sell a product as potentially complicated and significant as insurance. Consequently, almost every state in the country forbids unlicensed individuals and entities from acting as insurance brokers or receiving money

2
CLASS ACTION COMPLAINT

for insurance brokering. This includes California and Connecticut. *See* Cal. Ins. Code § 1631 and Conn. Gen. Stat. Ann. § 38a-702b.

13. Despite these prohibitions, transportation companies such as airlines, including Defendant, have come under fire for receiving undisclosed, illegal brokerage fees or commissions—i.e., kickbacks—from the travel-insurance companies that they promote on their websites. In August 2018, United States Senator Edward J. Markey released a report detailing this practice, which—in addition to being illegal under state law—is inequitable for several reasons, including: travel insurance is typically only necessary, in the first place, because the airlines themselves have begun charging exorbitant switching and cancelation fees; the insurance that these airlines promote is often significantly inferior to the insurance that's available on the open market (i.e., it offers less coverage and presents significant obstacles to reimbursement); and travel-insurance kickbacks now constitute an illegal but significant "profit center" for "almost every major airline" in the country—one that's being unknowingly funded by consumers.[2]

14. Defendant United engages in the type of unlicensed insurance brokering described in the Markey Report. Throughout the class period, United urged its passengers, via its website, to buy travel insurance from the specific third-party insurer it was partnered with at the time—Allianz (prior to October 2017)[3] and the Travel Guard Group (after October 2017).[4] If a passenger in fact opted for coverage, they would pay a certain sum to the insurer in exchange for the travel insurance. That sum, however, included an undisclosed fee that the insurer would then pay back to United, or allow United to retain, in exchange for helping broker the insurance sale; i.e., United was paid an illegal brokerage fee.

15. United did not, however, disclose to consumers that it was receiving these kickbacks, and its website misled consumers into unknowingly funding its improper brokerage fees, as described in more detail, below.

---

[2] *See* OFFICE OF SENATOR EDWARD J. MARKEY, FLYER BEWARE: IS TRAVEL INSURANCE WORTH IT? (2018), available at https://www.markey.senate.gov/imo/media/doc/Flyer%20Beware%20Report.pdf

[3] More specifically, Allianz Global Assistance, Jefferson Insurance Company, and BCS Insurance Company.

[4] More specifically, AIG and the National Union Fire Insurance Company of Pittsburgh.

**B.  United misleads consumers into funding its illegal brokerage fees.**

16. In addition to operating flights nationwide, United operates hundreds of daily flights to and from 78 domestic destinations in the United States. As part of its business, United sells tickets to customers through its website, www.United.com.

17. When a customer visits United's website, the site allows the customer to select their preferred destination and travel dates.

18. After the customer selects their specific flight, United's website provides the customer with the price of that flight.

19. Before the customer completes their purchase, United's website requires the customer to make an election regarding purchasing a travel-insurance policy with a third-party insurance provider.

20. There is no way to purchase a ticket on United's website without making an election regarding travel insurance.

21. United markets the third-party travel insurance to its customers in a uniform fashion—each customer sees the same marketing language when purchasing a ticket.

22. After the customer selects the desired flight or flights, enters their personal information, and selects their seat, the customer reaches the "Payment" page.

23. At the top of this page is a heading in bold that states: "United Travel Options."

24. Prior to October 2017 (i.e., when United was partnered with Allianz), below that sentence was the option to click "Yes, add protection for [$X]." This was followed by several items urging consumers to purchase travel insurance, including: a quote from Frommer's noting that "[i]t's wise to always consider a travel protection plan to cover your trip costs from the unexpected"; the "Top 4 reasons you need travel insurance"; and an "Important Fact" noting the high out-of-pocket costs associated with medical emergency transportation.

25. This was followed by an option to click "No, I will travel without this insurance for my [ticket price] trip."

26. The bottom of the page noted that the policy being provided through United's website was underwritten by the Allianz group.

27. Consumers could only proceed with their ticket purchases after clicking either the Yes or

4
CLASS ACTION COMPLAINT

No option.

28. If the consumer opted to purchase travel insurance from Allianz, United would send the customer a ticket receipt. The receipt noted that the specific amount charged for "Travel insurance" would be "Billed separately by Allianz Global Assistance."

29. Post-October 2017 (i.e., when United began partnering with the Travel Guard Group), under the "United Travel option" heading, there is a sentence that reads "Cover your trip with Travel Guard® insurance."

30. Below that sentence, the Payment page contains language presenting the Travel Guard insurance.

31. Specifically, the Payment page reads as follows:

> Don't miss out! Plan includes:
> --Flight refund if you can't travel for a covered reason
> --Coverage for flight cancellations and missed connections

32. The Payment page then presents the customer with two "option buttons." The first option states: "Yes, insure my trip for only $[Price]."

33. The second option states: "No, I will travel without this insurance for my [ticket price] trip."

34. Below these options is the statement, "Coverage is offered by Travel Guard Group, Inc." There is also a reminder not to "ignore the unexpected," followed by a list of unexpected events that may prohibit a trip. This is in turn followed by a statement that reads, "Over 10 million travelers trust Travel Guard plans for travel insurance."

35. Customers are required to make an insurance election and are unable to proceed with purchasing their airline tickets on United's website until they choose whether to purchase a trip-insurance policy. The customer cannot ignore the insurance offering and move on to purchasing a ticket. Throughout this process, United associates the purchase of travel insurance with an entity called "Travel Guard Group, Inc." and not with United.

   a) At the top of the Payment page, United tells the customer to "Cover your trip with Travel Guard insurance."

b) United then tells its customers that "[c]overage is offered by Travel Guard Group, Inc."

c) When United sends a receipt, it states that the cost of the travel insurance is remitted to Travel Guard Group, Inc.

d) One of the pages on United's website is titled "Travel Insurance," and it provides additional information about Travel Guard, including a lengthy, self-promotional statement by AIG (a member of the Travel Guard Group).

36. If the consumer opts to purchase travel insurance from Travel Guard, United sends the customer a ticket receipt. The receipt notes that the specific amount charged for "Travel insurance" will be "Billed separately by Travel Guard Group, Inc."

37. At no point either prior to or after October 2017 (again, when United switched insurers from Allianz to Travel Guard) did United disclose its financial interest in the sale of travel insurance to its consumers—either before, during, or after the consumer's transaction with United.

38. In addition, if a customer elects to buy travel insurance for a flight, the insurer will send the customer an email containing a copy of the purchased insurance policy. Nowhere in that communication or accompanying insurance policy is there any reference to United receiving any payment in connection with the transaction.

39. At no point does United disclose to consumers that it receives a commission or kickback every time a customer elects to purchase travel insurance, or that the consumers are funding this kickback. At no point during the class period did United disclose to Plaintiffs, or any of the class members, the true nature of its relationship with Allianz or the Travel Guard Group or any other entity that is associated with the travel insurance offered on United's website.

40. Further, by repeatedly indicating that Allianz or the Travel Guard Group will be the sole recipient of Plaintiffs' travel-insurance payments (e.g., by noting that these entities would bill Plaintiff for the full amount of his travel-insurance costs), United's website misleadingly indicates—in the affirmative—that a consumer's travel-insurance costs are passed through entirely to the third-party insurance company.

**C.     As a result of United's illegal brokerage fees, Plaintiff and the proposed class were damaged**

41.     Had United disclosed that the price of the travel-insurance product on United's website incorporates an illegal commission paid to United (as opposed to being based solely on underwriting risk and insurer profit), Plaintiffs would have not purchased the travel insurance and/or would have paid less for travel insurance.

42.     Indeed, travel insurance is available on the open market that is less expensive than the insurance offered on United's website, and often provides superior coverage, in part because the open-market insurance doesn't include any illegal kickbacks to United. For example, United's Travel Guard insurance is nearly twice as expensive as comparable—if not superior—plans that are otherwise available to consumers. This discrepancy is attributable to the illegal commissions that United receives from its insurers.

43.     On or around August 7, 2017, Plaintiff Salmons bought a travel insurance policy on United's website. Plaintiff Vallarta bought a travel insurance policy on United's website on September 28, 2018.

44.     In purchasing travel insurance, Plaintiffs viewed and were exposed to Defendant's website and the statements regarding the travel insurance.

45.     After completing the purchases, United sent Plaintiffs each an email with their individual purchase summaries and stated that the trip insurance would be billed separately.

46.     At no point did United inform Plaintiffs that a portion of the trip insurance billed to them included an illegal kickback to United.

47.     Had Plaintiffs been aware that a portion of the costs of their travel insurance was being used to fund an illegal kickback to United, they would not have paid for the travel insurance and/or would have paid less for travel insurance.

**D.     Plaintiffs' travel-insurance policies were purchased from third-parties and are unrelated to United's prices, rates, or services.**

48.     United provides no services to the customer in connection with the sale of travel insurance on its website.

7
CLASS ACTION COMPLAINT

49. The price of the travel insurance is a price offered or set by the insurer, not United.

50. No contractual relationship is formed between the customer and United in connection with a customer's purchase of travel insurance on United's website.

51. No bargained-for exchange takes place between the customer and United in connection with a customer's purchase of travel insurance on United's website.

52. United does not compete with other airlines for insurance-brokerage services, which—in any event—it is prohibited from providing under state law.

## CLASS ACTION ALLEGATIONS

53. Plaintiffs bring this proposed class action on behalf of themselves and on behalf of three classes – a National Class, a California Class, and a Connecticut Class (together, "Classes") pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and (b)(3). The National Class is initially defined as follows: All persons who purchased a travel insurance policy on United's website in the United States within the applicable limitations period (the "Class Period").

54. The California Class is initially defined as follows: All persons who purchased a travel insurance policy on United's website in the State of California within the applicable limitations period (the "Class Period").

55. The Connecticut Class is initially defined as follows: All persons who purchased a travel insurance policy on United's website in the State of Connecticut within the applicable limitations period (the "Class Period").

56. Excluded from the proposed Classes are: the Defendant, any entity in which the Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by the Defendant, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendant, and judicial officers to whom this case is assigned and their immediate family members.

57. Plaintiffs reserve the right to re-define the Class definitions after conducting discovery.

58. **Numerosity (Fed. R. Civ. P. 23(a)(1).** Pursuant to Rule 23(a)(1), the Classes are so numerous that joinder of all members would be impracticable. While the exact number of Class Members has not yet been determined, Plaintiffs believe that the Classes are comprised of millions of members geographically dispersed throughout the United States, and the States of California and

Connecticut. The Classes, however, are readily identifiable from information and records in the possession of Defendant and third-parties and can be ascertained through appropriate investigation and discovery. Class Members may be notified of the pendency of this action by any appropriate methods approved by the Court, which may include by mail or email, internet postings, or by published noticed.

59. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2); 23(b)(3))**. Common questions of law and fact exist with regard to each of the claims and predominate over questions affecting only individual members of the Classes.  Questions common to the Classes include, but not limited to the following:

   a) whether United engaged in the unlicensed practice of soliciting, negotiating, transacting, or effectuating contracts of insurance;

   b) whether United engaged in an unlawful, unfair, fraudulent acts and business practices by omitting its receipt or retention of kickbacks/commissions;

   c) whether the representations made about insurance premiums collected by United would lead a reasonable customer to believe it was a pass-through charge;

   d) whether United's omissions or misstatements relating to travel insurance would have been considered material by a reasonable consumer;

   e) whether United's omissions of misstatements regarding travel insurance resulted in the class being damaged;

   f) whether United receives undisclosed kickbacks, commissions, or fees from the sale of travel insurance; and

   g) whether United unlawfully enriched itself at the expense of the class.

60. These common questions predominate over any questions solely affecting individual class members.

61. **Typicality (Fed. R. Civ. P. 23(a)(3))**.  Pursuant to Rule 23(a)(3), Plaintiffs' claims are typical of the claims of the members of the Classes because of the similarity, uniformity, and common purpose of United's allegedly unlawful conduct. Like all class members, Plaintiffs were damaged by paying money that United deceptively presented as a pass-through charge to an insurance company, when in fact United enriched itself in this process.

62. **Adequacy of Representation (Fed. R. Civ. P. 23(a)(4)**. Pursuant to Rule 23(a)(4), Plaintiffs and their counsel will fairly and adequately protect the interests of the Classes. Plaintiffs have no interest antagonistic to, or in conflict with, the Classes that they seek to represent. Plaintiffs have retained competent and capable attorneys with significant experience in complex and class action litigation, including consumer class actions. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial and other resources to do so.

63. **Superiority (Fed. R. Civ. P. 23(b)(3)**. Class action treatment is a superior method for the fair and efficient adjudication of this controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action. There will be no significant difficulty in the management of this case as a class action.

64. **Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and (2))**. In the alternative, this action may properly be maintained as a class action, because:

(a) the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual members of the Classes, which would establish incompatible standards of conduct for Defendant; or

(b) the prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to individual members of the Classes which would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

(c) Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or corresponding declaratory relief with

respect to the Classes as a whole.

65. **Issue Certification. Fed. R. Civ. P. 23(c)(4).** In the alternative, the common questions of fact and law are appropriate for issue certification on behalf of the proposed Classes.

### FIRST CAUSE OF ACTION

### (Unjust Enrichment)

66. Plaintiffs re-allege paragraphs 1–63 as if fully set forth herein and further alleges the following:

67. Plaintiffs bring this claim for unjust enrichment on behalf of themselves and the proposed Nationwide, California and Connecticut Classes.

68. Plaintiffs and each class member conferred a benefit on United by funding United's illegal kickback, which allowed United to enrich itself to the detriment of Plaintiffs and the class members.

69. United appreciated, accepted, and retained this benefit, as it garnered substantial profits by virtue of its insurance kickback scheme.

70. Under the circumstances it would be inequitable to allow United to retain this benefit, as it was obtained through deceptive representations and was otherwise illegal under Connecticut's insurance laws.

71. Plaintiffs' claim to the money illegally retained by or paid to United is superior to United's claim, in part because United was never legally entitled to this money.

72. Plaintiffs and the Class members suffered damages as a result of United's unjust enrichment.

### SECOND CAUSE OF ACTION

### (Violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL"))

73. Plaintiff Vallarta re-allege paragraphs 1–70 as if fully set forth herein and further alleges the following:

74. Plaintiff Vallarta brings this claim for UCL violations on behalf of herself and the California Class.

75. United is a "person" as defined by Cal. Bus. & Prof. Code §17201.

76. United violated the UCL by engaging in unlawful, unfair, and deceptive business acts and practices.

77. United's unlawful business acts and practices include violating California Insurance Code § 1631, which prohibits soliciting, negotiating or effecting contracts of insurance without a license in the State of California.

78. United's unfair business acts and practices include violating California Insurance Code § 1631, which prohibits soliciting, negotiating or effecting contracts of insurance without a license in the State of California.  This conduct is substantially injurious to consumers, offends public policy, is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct any alleged benefit.

79. United's fraudulent acts and practices, as alleged herein, constitute fraudulent conduct because they were likely to deceive reasonable consumers.  Reasonable consumers purchasing the travel insurance from United were deceived into believing that their payments were for the premiums of the travel insurance but instead actually include kickbacks to United, who has no license solicit, negotiate or effect contracts of insurance in the State of California.

80. As a result of United's unlawful, unfair and fraudulent business acts and practices, Plaintiff suffered injury in fact and lost money.

81. Plaintiff seeks all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from United's unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

### THIRD CAUSE OF ACTION

**(Violations of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. Ann. § 42-110b)**

82. Plaintiff Salmons re-alleges paragraphs 1–79 as if fully set forth herein and further alleges the following:

83. Plaintiff brings this claim for violations of the Connecticut Unfair Trade Practices Act (the "CUTPA"), § 42-110b of Connecticut's General Statutes, on behalf of himself and the proposed Connecticut Class.

84. United violated the CUTPA's "unfair conduct" prong because, among other things: (a)

United's retention of kickbacks for unlicensed insurance brokering violates Connecticut's public policy and insurance laws, including Conn. Gen. Stat. Ann. § 38a-702b and Conn. Gen. Stat. Ann. § 38a-702l(a) and (b); (b) retaining illegal kickbacks at the expense of consumers who are unaware that they're funding these kickbacks is unethical; and (c) misleading consumers into unknowingly funding an illegal brokerage fee results in substantial monetary injury to those consumers.

85. United violated the CUTPA's "deceptive conduct" prong because United's omissions and misrepresentations regarding its retention of illegal brokerage fees were likely to materially mislead a reasonable consumer: (a) Defendant's misrepresentations and omissions, as described above, failed to indicate that a portion of Plaintiff's travel-insurance costs would be illegally retained by or funneled to United; (b) a reasonable consumer, in viewing Defendant's website, would be unaware that a portion of their travel-insurance cost were being illegally retained by or funneled to United; (c) and knowing that a portion of your travel-insurance costs were funding an illegal kickback scheme would materially affect a reasonable consumer's decision to pay (or not to pay) that amount.

86. Defendant engaged in such unlawful course of conduct with the intent to induce Plaintiff and the class members into purchasing travel insurance and paying prices above what they would otherwise pay or above what the policies are otherwise worth.

87. Plaintiff's injuries were not reasonably avoidable: Defendant and its insurers were the sole source of material information regarding United's commissions, and none of these entities disclosed this information to United's customers. Nor could consumers have reasonably anticipated that (for example) United would violate state insurance laws.

88. As a direct and proximate result of United's CUTPA violations, Plaintiff and the class have been damaged in an amount to be proven at trial.

89. Plaintiff and Class Members would not have purchased the insurance at issue but for United's unfair conduct.

90. Plaintiff and the Class Members have been actually aggrieved by United's unfair and deceptive practices in that they purchased the misrepresented product United was selling in the course of trade or commerce and were harmed financially because they: (a) would have sought out and paid less for their travel insurance coverage and/or (b) paid United a commission that United is not legally entitled

to as it is not a licensed insurance agent or broker. Plaintiff and the Class Members would not have paid that undisclosed commission had they been aware that it would be illegally retained by United.

91. Plaintiff and the Class Members have a monetary, out-of-pocket loss, as they paid money to United as a result of its unfair conduct.

92. Plaintiff and the Class Members are entitled to actual damages, declaratory and injunctive relief, attorneys' fees and costs, and all other remedies available under the CUTPA.

## FOURTH CAUSE OF ACTION

### (Conversion)

93. Plaintiffs re-allege paragraphs 1–90 as if fully set forth herein and further alleges the following:

94. Plaintiffs and Class members have an ownership right to the amounts of their payments illegally diverted to United as a kickback/commission.

95. Defendant has wrongly asserted dominion over the portions of the payments made by Plaintiffs and Class Members paid for trip insurance and illegally diverted to United as a kickback/commission. Defendant has done so with every trip insurance policy purchased through its website.

96. As a direct and proximate cause of Defendant's conversion, Plaintiffs and the Class Members suffered damages in the amount of the payments illegally diverted to United as a commission.

## FIFTH CAUSE OF ACTION

### (Fraudulent Concealment)

97. Plaintiffs re-allege paragraphs 1–94 as if fully set forth herein and further alleges the following:

98. Plaintiffs bring a claim for fraudulent concealment on behalf of themselves and the Nationwide Class, the California Class and the Connecticut Class.

99. Plaintiffs purchased travel insurance plans via Defendant's website, and were exposed to the language on that website.

100. As noted above, Defendant's website omitted material facts and made material misstatements regarding Defendant's receipt of illegal insurance-brokerage commissions.

101. Plaintiffs relied on Defendant's omissions and misstatements in deciding to purchase travel insurance, or in deciding to purchase travel insurance at the price paid for it.

102. But for Defendant's omissions and misstatements regarding its kickbacks, Plaintiffs would not have purchased insurance from Allianz, and/or would not have been paid as much as they did for his travel insurance.

103. Defendant knowingly made the omissions and misstatement identified above with the intent to defraud Plaintiffs.

104. Defendant had superior knowledge regarding the omission at issue, i.e., Defendant, and not Plaintiffs, was in a better position to know that it was receiving illegal kickbacks from insurance companies.

105. Consumers could not readily know that Defendant was receiving undisclosed, illegal insurance commissions, in part because both Defendant and the insurers it partnered with actively withheld this information from consumers.

106. Defendant, who actively withheld knowledge of its illegal kickbacks from consumers, was aware that consumers would be relying on these omissions and misstatements in agreeing to fund Defendant's illegal kickbacks.

107. As a consequence of Defendant's fraudulent concealment, Plaintiffs were injured in an amount equal to the cost of the insurance; to the difference between the insurance and the cost of comparable insurance; or to the cost of the kickback that United received.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and members of the Classes, pray for relief as follows:

A. An order certifying the proposed Classes and designating Plaintiffs as the named representative of the Classes and designating their attorneys as Class Counsel;

B. All declaratory relief available;

C. An award to Plaintiffs and the Classes of compensatory, exemplary, and statutory damages, in an amount to be proven at trial;

D. An order enjoining Defendant from further engaging in the misconduct alleged herein;

E.  For restitution of all money or property wrongfully obtained by Defendant;

   F.  For disgorgement, for the benefit of the Classes, all or part of the ill-gotten profits;

   G.  An award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5, or as otherwise allowed by law;

   H.  An award of pre-judgment and post-judgment interest, as provided by law;

   I.  Leave to amend the Complaint to conform to the evidence produced at trial; and

   J.  Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury of all claims so triable.

Respectfully submitted,

Dated: September 20, 2019

**GLANCY PRONGAY & MURRAY**
By: s/ *Marc L. Godino*
Marc L. Godino
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: 310-201-9150
Facsimile: 310-432-1495
Email: mgodino@gmail.com

**LEVI & KORSINSKY, LLP**
Rosemary M. Rivas
Email: rrivas@zlk.com
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 373-1671
Facsimile: (415) 484-1294

**TAUS, CEBULASH & LANDAU, LLP**
Kevin Landau
Brett Cebulash
80 Maiden Lane, Suite 1204
New York, New York 10038
Telephone: (212) 931-0704

**GUSTAFSON GLUEK PLLC**
Daniel C. Hedlund
120 South 6th St.
Minneapolis, MN 55401
Telephone: (612) 333-8844
Facsimile: (612) 339-6622

**GUSTAFSON GLUEK PLLC**
Dennis Stewart
600 B Street, 17th Floor
San Diego, CA 92101
Telephone: (619) 595-3299

*Counsel for Plaintiffs Diana Vallarta and Lisa Salmons*