RILEY SAFER HOLMES & CANCILA LLP
RACHEL F. SIFUENTES (CSB #324403)
rsifuentes@rshc-law.com
456 Montgomery Street, 16th Floor
San Francisco, California 94104
Telephone:     (415) 275-8550
Facsimile:     (415) 275-8551
SONDRA A. HEMERYCK, *pro hac vice* pending
shemeryck@rshc-law.com
AZAR ALEXANDER, *pro hac vice* pending
aalexander@rshc-law.com
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
Telephone:     (312) 471-8700
Facsimile:     (312) 471-8701

*Attorneys for Defendant*
UNITED AIRLINES, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DIANA VALLARTA and LISA SALMONS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED AIRLINES, INC.,<br><br>Defendant. | Case No.  4:19-cv-5895-HSG<br><br>**DEFENDANT UNITED AIRLINES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT, AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge:  Hon. Haywood S. Gilliam, Jr.<br>Courtroom:  2, 4th Floor<br>Hearing Date: January 16, 2020<br>Hearing Time: 2:00 p.m.<br><br>Complaint Filed:  September 20, 2019 |

4:19-cv-5895 HSG

DEFENDANT UNITED AIRLINES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
CLASS ACTION COMPLAINT AND SUPPORT MEMORANDUM OF POINTS AND AUTHORITES

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

INTRODUCTION ........................................................................................................................ 1

COMPLAINT ALLEGATIONS................................................................................................... 3

ARGUMENT ............................................................................................................................... 5

I.      THE COMPLAINT DOES NOT PLEAD ANY COGNIZABLE CLAIMS BY
        VALLARTA ...................................................................................................................... 5

        A.      Legal Standard ....................................................................................................... 5

        B.      Vallarta Fails to State a Claim Under California's Unfair Competition Law.......... 6

                1.      The California Insurance Code Provides a "Safe Harbor" That Bars
                        Vallarta's UCL Claim ................................................................................ 8

                2.      Vallarta Fails to Allege Fraudulent Conduct. ............................................ 8

                3.      Vallarta Fails to Allege An Actual Injury Caused by the Alleged
                        Unfair or Deceptive Practices .................................................................... 9

        C.      Vallarta Fails to State a Claim for Unjust Enrichment ......................................... 11

        D.      Vallarta Fails to State a Claim for Conversion .................................................... 12

        E.      Vallarta Fails to State a Claim for Fraudulent Concealment ................................ 13

II.     THIS COURT LACKS JURISDICTION OVER THE CLAIMS ASSERTED BY
        SALMONS AND THE PUTATIVE CONNECTICUT CLASS. ...................................... 13

        A.      Legal Standard ..................................................................................................... 14

        B.      The Claims of Salmons and the Putative Connecticut Class Lack the
                Minimum Contacts With this Forum Necessary for the Court to Exercise
                Jurisdiction Over United ...................................................................................... 15

III.    THIS COURT LACKS JURISDICTION OVER THE ASSERTED CLAIMS OF
        NON-RESIDENT MEMBERS OF THE PUTATIVE NATIONWIDE CLASS. ............. 17

IV.     THE COMPLAINT DOES NOT PLEAD ANY COGNIZABLE CLAIM BY
        SALMONS........................................................................................................................ 19

        A.      Salmons Fails to State a CUTPA Claim ............................................................... 19

                1.      Salmons Fails to Allege an Unfair or Deceptive Act or Practice.............. 19

                2.      Salmons Fails to Allege an Ascertainable Loss as a Result of the
                        Alleged Practice ...................................................................................... 21

DEFENDANT UNITED AIRLINES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
CLASS ACTION COMPLAINT AND SUPPORT MEMORANDUM OF POINTS AND AUTHORITES

B.     Salmons Fails to State a Claim for Unjust Enrichment.......................................... 22

C.     Salmons Fails to State a Claim for Conversion ...................................................... 22

D.     Salmons Fails to State a Claim for Fraudulent Concealment ................................ 23

V.      THE AIRLINE DEREGULATION ACT PREEMPTS PLAINTIFFS' CLAIMS. ........... 23

CONCLUSION ................................................................................................................................ 25

DEFENDANT UNITED AIRLINES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
CLASS ACTION COMPLAINT AND SUPPORT MEMORANDUM OF POINTS AND AUTHORITES

1

## <u>TABLE OF AUTHORITIES</u>

2

Page

3

**CASES**

*Ahern v. Apple Inc.,*
4    No. 18-CV-07196-LHK, 2019 WL 5102621 (N.D. Cal. Oct. 11, 2019) ............................. 13

5    *Alaska Airlines Inc. v. Carey,*
    395 F. App'x 476 (9th Cir. 2010) ....................................................................................... 24

6    *Am. Airlines, Inc. v. Wolens,*
    513 U.S. 219 (1995) ............................................................................................................ 24

7    *Arapahoe Cty. Pub. Airport Auth. v. F.A.A.,*
    242 F.3d 1213 (10th Cir. 2001) .......................................................................................... 25
8
    *Ashcroft v. Iqbal,*
9    556 U.S. 662 (2009) ................................................................................................... 4, 5, 6

10    *Astiana v. Hain Celestial Grp., Inc.,*
    783 F.3d 753 (9th Cir. 2015) .............................................................................................. 11

11    *Axiom Foods, Inc. v. Acerchem Int'l, Inc.,*
    874 F.3d 1064 (9th Cir. 2017) ............................................................................................ 15

12    *Baird v. Samsung Elecs. Am., Inc.,*
    No. C 17-06407 JSW, 2018 WL 4191542 (N.D. Cal. July 20, 2018) ................................. 13
13
    *Banga v. Gundumolgula,*
14    No. 2:13-CV-00667-MCE, 2013 WL 3804046 (E.D. Cal. July 19, 2013) .......................... 24

15    *Bastanchury v. Times-Mirror Co.,*
    68 Cal. App. 2d 217 (1945) ................................................................................................. 12

16    *Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................................................. 5

17    *Berryman v. Merit Prop. Mgmt., Inc.,*
    152 Cal. App. 4th 1544 (2007) ............................................................................. 6, 7, 9, 12
18
    *BNSF Ry. Co. v. Tyrrell,*
19    137 S. Ct. 1549 (2017) ........................................................................................................ 15

20    *Bower v. Egyptair Airlines Co.,*
    731 F.3d 85 (1st Cir. 2013) ................................................................................................. 25

21    *Brighton Trustees v. Transamerica Life Ins. Co.,*
    No. 2:19-cv-04210-CAS(GJSx), 2019 WL 578495 (C.D. Cal. Nov. 4, 2019) ................... 12
22
    *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.,*
23    137 S. Ct. 1773 (2017) ................................................................................................ passim

    *Brown v. United Airlines, Inc.,*
24    720 F.3d 60 (1st Cir. 2013) ................................................................................................. 24

25    *Buller v. Sutter Health,*
    160 Cal. App. 4th 981 (2008) ............................................................................................... 9

26    *Carson v. Allianz Life Ins. Co. of North America,*
    194 A.3d 1214 (Conn. Ct. App. 2018) ............................................................................... 23

27    *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
    20 Cal. 4th 163 (1999) .......................................................................................................... 7
28

CollegeSource, Inc. v. AcademyOne, Inc.,
  653 F.3d 1066 (9th Cir. 2011)....................................................................14

Contra Hinchliffe v. American Motors Corp.,
  440 A.2d 810 (Conn. 1981) ......................................................................21

Daimler AG v. Bauman,
  571 U.S. 117 (2014)............................................................................14, 15

Davis v. HSBC Bank Nevada, N.A.,
  691 F.3d 1152 (9th Cir. 2012)....................................................................8

Deming v. Nationwide Mutual Ins. Co.,
  905 A.2d 623 (2006)..........................................................................22, 23

Gagne v. Vaccaro,
  766 A.2d 416 (Conn. 2001) ......................................................................22

Girard v. Toyota Motor Sales, U.S.A., Inc.,
  316 F. App'x 561 (9th Cir. 2008) ..............................................................12

Greene v. Mizuho Bank, Ltd.,
  289 F. Supp. 3d 870 (N.D. Ill. Dec. 11, 2017)....................................17, 19

Gress v. Freedom Mortg. Corp.,
  386 F. Supp. 3d 455 (M.D. Pa. 2019) .......................................................19

Hadley v. Kellogg Sales Co.,
  243 F. Supp. 3d 1074 (N.D. Cal. 2017) ..................................................6, 7

Helms v. Wells Fargo Bank, N.A.,
  775 F. App'x 895 (9th Cir. 2019) ................................................................4

Hickman v. TL Transp., LLC,
  317 F. Supp. 3d 890 (E.D. Pa. July 12, 2018)......................................16, 19

Horowitz v. AT&T Inc.,
  No. 3:17-cv-4827-BRM(LHG), 2018 WL 1942525 (D.N.J. Apr. 25, 2018).......16, 19

In re Dental Supplies Antitrust Litig.,
  No. 16 Civ. 696, 2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017) ................18

In re GlenFed, Inc. Sec. Litig.,
  42 F.3d 1541 (9th Cir. 1994).................................................................6, 9

In re Korean Air Lines Co., Ltd.,
  642 F.3d 685 (9th Cir. 2011)....................................................................24

In re Samsung Galaxy Smartphone Mktg. and Sales Practices Litig.,
  No. 16-cv-06391-BLF, 2018 WL 1576457 (N.D. Cal. March 30, 3018) ...........16

Int'l Shoe Co. v. Washington,
  326 U.S. 310 (1945)..................................................................................14

Kauai Scuba Ctr., Inc. v. PADI Americas, Inc.,
  524 F. App'x 344 (9th Cir. 2013) ..............................................................10

Kearns v. Ford Motor Co.,
  567 F.3d 1120 (9th Cir. 2009).....................................................................6

Khouri v. United Airlines, Inc.,
  32 F. App'x 318 (9th Cir. 2002) ................................................................15

Larobina v. Wells Fargo Bank, N.A.,
  No. 3:10-cv-01279 (MPS), 2014 WL 3419534 (D. Conn. July 10, 2014) ...........21

*Leppert v. Champion Petfoods USA Inc.*,
    No. 18 C 4347, 2019 WL 216616 (N.D. Ill. Jan. 16, 2019).................................................18

*Levitt v. Sw. Airlines Co.*,
    846 F. Supp. 2d 956 (N.D. Ill. 2012) ....................................................................................24

*Maclin v. Reliable Reports of Texas, Inc.*,
    314 F. Supp. 3d 845 (N.D. Ohio 2018)..................................................................................18

*Macomber v. Travelers Property and Cas. Corp.*,
    804 A.2d 180 (Conn. 2002) ....................................................................................................22

*Marinos v. Poirot*,
    66 A.3d 860 (Conn. 2013) ......................................................................................................21

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
    647 F.3d 1218 (9th Cir. 2011).................................................................................................15

*McCann v. Lucky Money, Inc.*,
    129 Cal. App. 4th 1382 (2005) ................................................................................................7

*McCullough v. World Wrestling Entertainment, Inc.*,
    172 F.Supp.3d 528 (D. Conn. 2016) ......................................................................................23

*McDonnell v. Nature's Way Prods., LLC*,
    No. 16 C 5011, 2017 WL 4864910 (N.D. Ill. Oct. 26, 2017) ...............................................18

*Molock v. Whole Foods Mkt., Inc.*,
    Case No. 18-7162 (D.C. Cir.), Dkt. # 1807990 ....................................................................19

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992)..........................................................................................................23, 24

*Mussat v. IQVIA Inc.*,
    No. 17 C 8841, 2018 WL 5311903 (N.D. Ill. Oct. 26, 2018) ...............................................18

*Mystic Color Lab, Inc. v. Auctions Worldwide LLC*,
    934 A.2d 227 (Conn. 2007) ....................................................................................................22

*Northwest, Inc. v. Ginsberg*,
    572 U.S. 273 (2014)................................................................................................................23

*Outdoor Media Grp., Inc. v. City of Beaumont*,
    506 F.3d 895 (9th Cir. 2007).....................................................................................................3

*Peterson v. Cellco P'ship*,
    164 Cal. App. 4th 1583 (2008) ..............................................................................................10

*Picot v. Weston*,
    780 F.3d 1206 (9th Cir. 2015).................................................................................................14

*Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*,
    301 F. Supp. 3d 840 (N.D. Ill. 2018) ....................................................................................18

*Resnick v. Hyundai Motor America, Inc.*,
    No. CV 16-00593-BRO, 2017 WL 1531192 (C.D. Cal. Apr. 13, 2017)..................................6

*Rivera v. JetBlue Airways Corp.*,
    No. 3:17-CV-00960, 2018 WL 264735 (D. Conn. Jan. 2, 2018)...........................................24

*Sanchez v. Aerovias De Mexico, S.A. De C.V.*,
    590 F.3d 1027 (9th Cir. 2010).................................................................................................24

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004)...................................................................................................15

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ................................................................................. 17

*Shrem v. Sw. Airlines Co.*,
    No. 15-cv-04567-HSG, 2016 WL 4170462 (N.D. Cal. Aug. 8, 2016) ................................ 25

*State of Connecticut v. Acordia, Inc.*,
    73 A.2d 711 (Conn. 2013) ...................................................................... 14, 16, 20

*Statland v. Am. Airlines, Inc.*,
    998 F.2d 539 (7th Cir. 1993) ......................................................................... 25

*Stuart v. Cadbury Adams USA, LLC*,
    458 F. App'x 689 (9th Cir. 2011) ...................................................................... 9

*Sutra Beauty, Inc. v. Duran*,
    No. 2:18-cv-03768-ODW(SSx), 2019 WL 688201 (C.D. Cal. Feb. 15, 2019) ................... 11

*Tenet Healthsystem Desert, Inc. v. Blue Cross of Cal.*,
    245 Cal. App. 4th 821 (2016) ....................................................................... 13

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ...................................................................... 6, 9

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................. 18

*Warner v. Tinder Inc.*,
    105 F. Supp. 3d 1083 (C.D. Cal. 2015) ............................................................... 11

*Williamson v. Reinalt-Thomas Corp.*,
    No. 5:11-CV-03548-LHK, 2012 WL 1438812 (N.D. Cal. Apr. 25, 2012) ................... passim

*Wind Corporation v. Wesko Locks, Ltd.*,
    No. 3:18-cv-292(AWT), 2018 WL 8729585 (D. Conn. Aug. 24, 2018) ......................... 21

*World–Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ................................................................................. 14

*Zuehlsdorf v. FCA US LLC*,
    No. 18-1877-JGB(KKx), 2019 WL 2098352 (C.D. Cal. Apr. 30, 2019) ......................... 11

**STATUTES**

49 U.S.C. § 40101 et seq. .......................................................................... 3, 23

Cal. Bus. & Prof. Code § 17200 et seq. .......................................................... passim

Cal. Code Civ. Proc. § 410.10 ...................................................................... 14

Cal. Ins. Code § 1631 ................................................................................. 7

Cal. Ins. Code § 1753 ................................................................................. 8

Cal. Ins. Code § 1754 ................................................................................. 8

Conn. Gen. Stat. § 38 ............................................................................. 20, 21

Conn. Gen. Stat. § 42-110 ....................................................................... passim

**RULES**

Fed. R. Civ. P. 12(b) .............................................................................. passim

Fed. R. Civ. P. 23 ................................................................................ 17, 18

Fed. R. Civ. P. 9(b) .......................................................................... 2, 6, 9, 13

1

**OTHER AUTHORITIES**

2 Newberg on Class Actions § 6:26 (5th ed.) ............................................................................... 18

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    PLEASE TAKE NOTICE THAT on January 16, 2020, at 2:00 p.m. in Courtroom 2 of the

2    above-entitled Court, Defendant United Airlines, Inc. ("United") will and hereby does move this

3    Court to dismiss the Class Action Complaint of Plaintiffs Diana Vallarta and Lisa Salmons

4    pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

5    As set forth below, the Class Action Complaint should be dismissed in its entirety

6    pursuant to Rule 12(b)(6) because it fails to state a claim upon which relief may be granted with

7    respect to either Plaintiff.  In addition, this Court does not have jurisdiction over the claims

8    asserted against United—a Delaware corporation with its principal place of business in Illinois—

9    by Salmons, a Connecticut resident, or by other non-California resident members of the putative

10   classes.  Those claims should accordingly be dismissed pursuant to Federal Rule 12(b)(2).  This

11   Motion is based on this Notice of Motion and Motion, the following Memorandum of Points and

12   Authorities, and the pleadings, papers, and records presently on file in this action, as well as such

13   further pleadings, papers and oral argument, if any, as may be properly presented hereafter.

14   **<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

15   **<u>INTRODUCTION</u>**

16   In September 2018 and August 2017, respectively, Plaintiff Diana Vallarta ("Vallarta") of

17   San Jose, California and Plaintiff Lisa Salmons ("Salmons") of Stamford, Connecticut

18   (collectively, "Plaintiffs") purchased trip insurance through Defendant United Airlines, Inc.'s

19   ("United") website.  (Class Action Complaint, Doc. 1 (hereafter, "Compl."), ¶¶ 3, 4.)  According

20   to Plaintiffs' allegations, after they completed these purchases, United "sent Plaintiffs each an

21   email with their individual purchase summaries and stated that the trip insurance would be billed

22   separately."  (*Id.* ¶ 45.)  Plaintiffs do not allege any other facts about their individual purchases of

23   trip insurance.

24   Notably, Plaintiffs do not assert any objection to the trip insurance policies themselves.

25   They do not allege any failure to receive their policies, that the terms of the policies they received

26   differed in any way from the policies they paid for, or that they were charged an amount different

27   from the premium advertised on United's website.  Nevertheless, Plaintiffs now seek to assert

28   claims against United based on the conclusory allegation that they "would have not purchased the

1    travel insurance and/or would have paid less for travel insurance" if United had disclosed that

2    United allegedly receives a "commission" from the travel insurance carriers when a policy is sold

3    through United's website.  (*Id.* ¶ 41.)  Based on this theory, Plaintiff Vallarta purports to assert a

4    claim against United on behalf of a California class for violation of the California Unfair

5    Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. ("UCL"), Plaintiff Salmons purports

6    to assert a claim against United on behalf of a putative Connecticut class for violation of the

7    Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b ("CUTPA"), and both

8    Plaintiffs purport to assert claims on behalf of the asserted California and Connecticut classes, as

9    well as a putative nationwide class, for unjust enrichment, conversion and fraudulent

10   concealment.

11        Plaintiffs' Class Action Complaint should be dismissed because it fails to state any claim

12   against United with respect to either Plaintiff.  Plaintiff Vallarta cannot assert a claim under the

13   UCL because the allegedly prohibited conduct is expressly allowed under California law, her

14   allegations do not satisfy Federal Rule of Civil Procedure 9(b), she does not allege either a

15   misrepresentation or an actionable omission, and she does not allege an actual injury caused by

16   the allegedly unfair practice.  Salmons cannot assert a CUTPA claim because she has not pleaded

17   (and cannot plead) a violation of the Connecticut Unfair Insurance Practices Act ("CUIPA"),

18   which is necessary for her to maintain a CUTPA claim relating to an insurance practice.  Nor can

19   she cure this deficiency, since the allegedly prohibited conduct is expressly allowed under

20   Connecticut law.  Further, Salmons does not plead the threshold requirement of an ascertainable

21   loss due to the alleged unfair conduct.

22        Plaintiffs' unjust enrichment, conversion, and fraudulent concealment claims are premised

23   on the same allegations as their UCL and CUTPA claims, and therefore should be dismissed with

24   those claims.  In addition, these claims fail independently of the defects in Plaintiffs' UCL and

25   CUTPA claims because they are insufficiently pleaded.  Regarding unjust enrichment, California

26   does not recognize a standalone cause of action, warranting immediate dismissal of Vallarta's

27   claim, and Salmons fails to identify a specific benefit wrongfully obtained and retained by United

28   to her detriment, as required to state an unjust enrichment claim under Connecticut law.

1   Plaintiffs' claims for conversion likewise do not survive, as Plaintiffs allege no specific,

2   identifiable monies to which they had a right of possession at all times, as required under both

3   California and Connecticut law.  Nor has either Plaintiff stated a claim for fraudulent

4   concealment.  Salmons's claim for fraudulent concealment should be dismissed because

5   Connecticut does not recognize an independent cause of action for fraudulent concealment, and

6   Vallarta does not allege that United had any duty to disclose the allegedly concealed information,

7   as required to state a fraudulent concealment claim under California law.

8        Further, because this Court lacks personal jurisdiction over United with respect to any

9   claims that do not have a sufficient connection to California, the claims asserted by Salmons, on

10  behalf of herself and a putative Connecticut class, should be dismissed pursuant to Federal Rule

11  12(b)(2), and Plaintiffs' allegations of a putative nationwide class should be stricken.  *See Bristol-*

12  *Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773 (2017)

13  (hereafter, "*Bristol-Myers*").

14       Finally, Plaintiffs' Class Action Complaint should be dismissed in its entirety because all

15  of Plaintiffs' asserted claims are preempted by the Airline Deregulation Act of 1978, 49 U.S.C. §

16  40101 et seq. (the "ADA").

17  **COMPLAINT ALLEGATIONS**[1]

18       Plaintiff Diana Vallarta is a resident of California, and Plaintiff Lisa Salmons is a resident

19  of Connecticut.  (Compl. ¶¶ 3-4.)  The Complaint alleges that on September 28, 2018 and August

20  7, 2017, respectively, Vallarta and Salmons purchased trip insurance from United's website.  (*Id.*;

21  *see also id.* ¶ 43.)  Plaintiffs also allege that "[a]fter completing the purchases, United sent

22  Plaintiffs each an email with their individual purchase summaries and stated that the trip

23  insurance would be billed separately."  (*Id.* ¶ 45.)

24       Although the Class Action Complaint is rife with inflammatory language and conclusory

25  assertions, it is entirely bereft of actual *facts* that would allow the Court to conclude that either

26

27       [1] United accepts the well-pleaded factual allegations of the Class Action Complaint as true solely for the purposes of this Motion to Dismiss. *See Outdoor Media Grp., Inc. v. City of Beaumont*,

28  506 F.3d 895, 900 (9th Cir. 2007).

-3-    4:19-cv-5895 HSG

DEFENDANT UNITED AIRLINES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
CLASS ACTION COMPLAINT AND SUPPORT MEMORANDUM OF POINTS AND AUTHORITES

1   Plaintiff has a plausible claim for relief against United.  Plaintiffs do not allege any specific facts

2   about their individual purchases of travel insurance through United's website other than the dates

3   of those purchases.  Instead, the Class Action Complaint  purports to describe a generic process

4   for purchasing travel insurance on United's website that has no alleged connection to Plaintiffs'

5   own purchases.[2]

6           Plaintiffs allege that when purchasing a ticket for air travel through United's website, "the

7   customer" is required to make an election regarding the purchase of a travel insurance policy with

8   a third-party insurance provider.  (*Id.* ¶ 19.)  Plaintiffs further allege that, after "the customer

9   selects the desired flight or flights, enters their personal information, and selects their seat, the

10  customer reaches the 'Payment' page."  (*Id.* ¶ 22.)  Plaintiffs allege that, prior to October 2017,

11  the "Payment page" included the option to click "Yes, add protection for [$X]," followed by (i)

12  "a quote from Frommer's noting that '[i]t's wise to always consider a travel protection plan to

13  cover your trip costs from the unexpected,'" (ii) the "'Top 4 reasons you need travel insurance,'"

14  and (iii) "an 'Important Fact' noting the high out-of-pocket costs associated with medical

15  emergency transportation."  (*Id.* ¶ 24.)  Those statements were allegedly followed by an option to

16  click, "No, I will travel without this insurance for my [ticket price] trip."  (*Id.* ¶ 25.)  The Payment

17  Page also allegedly "noted that the policy being provided through United's website was

18  underwritten by the Allianz group."  (*Id.* ¶ 26.)  If the consumer opted to purchase travel

19  insurance from Allianz, United "would send the customer a ticket receipt," which "noted that the

20  specific amount charged for 'Travel Insurance' would be 'Billed separately by Allianz Global

21  Assistance.'"  (*Id.* ¶ 28.)

22          Plaintiffs also allege that, "[p]ost-October 2017," the Payment Page includes the sentence,

23  "Cover your trip with Travel Guard® insurance," as well as the following language "presenting"

24  the Travel Guard insurance:

25  _____

26  [2] While Plaintiffs allege that "United markets the third-party travel insurance to its customers in a
    uniform fashion—each customer sees the same marketing language when purchasing a ticket"
    (Compl. ¶ 21), that conclusion is not supported by any specific allegations and is accordingly not

27  entitled to the presumption of truth on a motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662,
    681 (2009) (conclusory allegations are not entitled to a presumption of truth); *Helms v. Wells*

28  *Fargo Bank, N.A.*, 775 F. App'x 895, 896 (9th Cir. 2019) (same).

Don't miss out! Plan includes:
—Flight refund if you can't travel for a covered reason
—Coverage for flight cancellations and missed connections

(*Id.* ¶¶ 29-31.)  Plaintiffs allege that the travel insurance offer is accompanied by "yes" or "no" option buttons, that the Payment page states that coverage is offered by Travel Guard Group, Inc., that "[t]here is also a reminder not to 'ignore the unexpected,'" followed by a list of unexpected events that may prohibit a trip, and that "[o]ver 10 million travelers trust Travel Guard® plans for travel insurance."  (*Id.* ¶¶ 32-34.)

Neither Plaintiff identifies any specific statement that she actually viewed on United's website at the time of purchasing her individual travel insurance policy, much less allege any facts showing that she relied on any of the statements.  To the contrary, the Class Action Complaint is markedly vague about the actual travel insurance offer presented to either Vallarta or Salmons, and is silent on their individual motives for purchasing the insurance.

Moreover, Plaintiffs do not allege that *any* of the website statements described in the Class Action Complaint are false, or that the travel insurance policies that customers receive are any different than what is marketed.  Instead, the *only* complaint Plaintiffs have about the website is that it allegedly doesn't make clear that United makes money on the sale of travel insurance through its website.  (*Id.* ¶¶ 39-40.)  Plaintiffs do not allege, however, that this asserted nondisclosure was the reason they purchased the travel insurance, or explain why it would be reasonable for Plaintiffs to expect United to permit free third-party service provider advertising on its website.

## **ARGUMENT**

### I.   THE COMPLAINT DOES NOT PLEAD ANY COGNIZABLE CLAIMS BY VALLARTA

#### A.   Legal Standard

When considering a Rule 12(b)(6) motion to dismiss, a court must accept "factual matter" in a complaint as true, but need not accept "bald allegations" or "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Under that standard, a complaint must be dismissed unless its well-pleaded factual allegations establish "a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  The

1  plausibility standard requires more than "a sheer possibility that a defendant has acted

2  unlawfully." *Iqbal*, 556 U.S. at 678.  In addition, a complaint asserting claims that sound in

3  fraud—including a claim for violation of California's UCL—must comply with the higher

4  pleading standard of Federal Rule 9(b).  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir.

5  2009).  Rule 9(b) requires the plaintiff to allege "the who, what, when, where, and how" of the

6  alleged fraudulent conduct, *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003),

7  and "set forth an explanation as to why [a] statement or omission complained of was false and

8  misleading." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc)

9  (superseded by statute on other grounds).  The allegations of the Class Action Complaint fail to

10  plead a claim by Vallarta under these standards.

11  **B.**     **Vallarta Fails to State a Claim Under California's Unfair Competition Law**

12     The UCL prohibits "any unlawful, unfair or fraudulent business act or practice[.]"  Bus. &

13  Prof. Code § 17200 et seq.  Because the UCL "is written in the disjunctive, it establishes three

14  varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent."

15  *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007).

16     The "unlawful" prong of the UCL "borrows" violations of other laws and treats them as

17  unlawful practices actionable under the UCL.  *Berryman*, 152 Cal. App. 4th at 1554; *Hadley v.

18  Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017); *Resnick v. Hyundai Motor

19  America, Inc.*, No. CV 16-00593-BRO, 2017 WL 1531192, at *18 (C.D. Cal. Apr. 13, 2017).  To

20  plead a claim under the unlawful prong of the UCL, a plaintiff must plead facts plausibly alleging

21  violation of another statute.  *See Hadley*, 243 F. Supp. 3d at 1094 ("If a plaintiff cannot state a

22  claim under the predicate law," the UCL claim "also fails") (internal quotation marks omitted);

23  *Resnick*, 2017 WL 1531192, at *18 (dismissing "unlawful" UCL claim where plaintiffs "failed to

24  sufficiently plead a claim for violation of any other statute").

25     The UCL's "unfair" prong prohibits a business practice that "violates established public

26  policy or is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which

27  outweighs its benefits."  *Hadley*, 243 F. Supp. 3d at 1104.  Although the test for what constitutes

28  an "unfair" business practice under California law is unsettled, courts in this district have held

-6-      4:19-cv-5895 HSG

1    that if the alleged unfair business practice "overlap[s] entirely" with the business practice alleged

2    to violate one or both of the other prongs of the UCL, the "unfair" claim cannot survive if the

3    claim with which it overlaps is dismissed.  *Id.* at 1104-05.

4          To state a claim under the UCL's "fraudulent" prong, a plaintiff must show that the

5    defendant's alleged conduct is "likely to deceive" a "reasonable consumer."  *Hadley*, 243 F.

6    Supp. 3d at 1089; *see also Williamson v. Reinalt-Thomas Corp.*, No. 5:11-CV-03548-LHK, 2012

7    WL 1438812, at *12 (N.D. Cal. Apr. 25, 2012) (same).  Notably, an alleged failure to disclose a

8    fact that one has no affirmative duty to disclose does not support a claim under the "fraud" prong

9    of the UCL.  *Berryman*, 152 Cal. App. 4th at 1557.  In addition, to have standing to bring a claim

10   under any prong of the UCL, a putative class representative such as Vallarta must show that she

11   "personally lost money or property" because of her own "actual and reasonable reliance on the

12   allegedly unlawful business practices."  *Williamson*, 2012 WL 1438812, at *10.

13         Finally, "[s]pecific legislation may limit the judiciary's power to declare [business]

14   conduct unfair.  If the Legislature has permitted certain conduct . . . courts may not override that

15   determination."  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 182

16   (1999); *McCann v. Lucky Money, Inc.*, 129 Cal. App. 4th 1382, 1387 (2005) (same).  Thus,

17   "[w]hen specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair

18   competition law to assault that harbor."  *Cel-Tech*, 20 Cal. 4th at 182.

19         In this case, Vallarta alleges that United's "unlawful" and "unfair" business practices

20   "include violating California Insurance Code § 1631, which prohibits soliciting, negotiating or

21   effecting contracts of insurance without a license in the State of California."  (Compl.  ¶¶ 77-78.)

22   Vallarta also asserts that United's "fraudulent acts and practices . . . constitute fraudulent conduct

23   because they were likely to deceive reasonable consumers," and that "[r]easonable consumers

24   purchasing the travel insurance from United were deceived into believing that their payments

25   were for the premiums of the travel insurance but instead actually include kickbacks to United,

26   who has no license solicit, negotiate or effect contracts of insurance in the State of California."

27   (*Id.* ¶ 79.)  Vallarta fails to state a claim under any prong of the UCL because California law

28   expressly permits the conduct that she alleges.  In addition, Vallarta fails to sufficiently allege any

fraud, or that she "personally lost money or property" because of her own "actual and reasonable reliance on the allegedly unlawful business practices." The Class Action Complaint's Second Cause of Action should therefore be dismissed.

### 1. The California Insurance Code Provides a "Safe Harbor" That Bars Vallarta's UCL Claim

Vallarta's UCL claim is premised on the theory that United violates the California Insurance Code by receiving payment from the insurance carriers that it allows to offer travel insurance to United's customers through United's website. Indeed, the Class Action Complaint repeatedly (and inaccurately) characterizes these fees as "illegal brokerage fees" or "kickbacks." (*See, e.g.*, Compl. ¶¶ 1, 13-15, 39, 42, 46-47, 59, 68-69, 79, 94-95, 100, 102, 104-107.) In fact, however, the conduct alleged by Vallarta is expressly *permitted* by California law. Specifically, Section 1754 of the California Insurance Code expressly *allows* a "travel retailer," such as an airline, to "offer[] and sell[] travel insurance on behalf of a licensed limited lines travel insurance agent," and "to receive compensation" for such activities. Cal. Ins. Code § 1754. Permissible activities within the scope of this provision include "[o]ffering and disseminating information to a prospective or current policyholder…, including brochures, buyer guides, descriptions of coverage, and price" of travel insurance policies. Cal. Ins. Code § 1753(b)(1). These are precisely the activities in which Vallarta alleges United is engaged. Because California law expressly allows the alleged conduct on which Vallarta premises her UCL claim, that claim cannot proceed, and must be dismissed. *See, e.g.*, *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1165 (9th Cir. 2012) (holding that because defendants' disclosure of their annual credit card fees in their online application "was permitted by federal law," it could not "serve as the basis for UCL liability").

### 2. Vallarta Fails to Allege Fraudulent Conduct

Vallarta alleges that United's "fraudulent acts and practices . . . constitute fraudulent conduct because they were likely to deceive reasonable consumers," and that "[r]easonable consumers purchasing the travel insurance from United were deceived into believing that their payments were for the premiums of the travel insurance but instead actually include kickbacks to

United, who has no license solicit, negotiate or effect contracts of insurance in the State of California." (Compl. ¶ 79.) Even putting aside the "safe harbor" that bars Vallarta's UCL claim, this vague and conclusory allegation is wholly insufficient to state a claim under the UCL's "fraud" prong. Vallarta fails to specifically allege "the who, what, when, where, and how" of the alleged fraudulent conduct, *Vess*, 317 F.3d at 1106, or to "set forth an explanation as to why [a] statement or omission complained of was false and misleading," *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1548, as required by Rule 9(b). Vallarta does not identify the "fraudulent acts and practices" to which she refers, much less explain how consumers allegedly were "deceived" by those unspecified "fraudulent acts and practices." In fact, as previously noted, Vallarta does not allege that any statement on United's website was false. Accurate, truthful statements are not actionable. *See, e.g.*, *Stuart v. Cadbury Adams USA, LLC*, 458 F. App'x 689, 691 (9th Cir. 2011) (affirming dismissal with prejudice of UCL claims based on accurate statements and omissions not likely to deceive reasonable consumers).

To the extent Vallarta seeks to premise her claim on United's nondisclosure of its alleged receipt of compensation in connection with the marketing of trip insurance on its website, the alleged conduct is insufficient as a matter of law to support a UCL fraud claim. A failure to disclose is not actionable under the UCL unless there is an affirmative duty to disclose. *Berryman*, 152 Cal. App. 4th at 1557; *Buller v. Sutter Health*, 160 Cal. App. 4th 981, 987 (2008). Vallarta has not alleged any basis upon which to impose such a duty on United. In addition, courts have found no deception as a matter of law, and dismissed with prejudice, UCL claims based on a defendant's alleged failure to disclose a profit or fee that is included within the purchase price the plaintiff agreed to pay. *See, e.g.*, *Williamson*, 2012 WL 1438812, at *10 (no deception "where Plaintiff paid the precise amount the Defendant's clerk quoted"). For these reasons as well, the Class Action Complaint fails to state a claim under the "fraudulent" prong of the UCL.

> **3.**    <u>**Vallarta Fails to Allege An Actual Injury Caused by the Alleged Unfair or Deceptive Practices**</u>

To have standing to bring a claim under the UCL, a plaintiff purporting to represent a

-9-        4:19-cv-5895 HSG

1  putative class must show that she personally lost money or property because of her own "actual

2  and reasonable reliance on the allegedly unlawful business practices." *Id.* at *10. Vallarta makes

3  wholly conclusory allegations that "[h]ad United disclosed that the price of the travel-insurance

4  product on United's website incorporates an illegal commission paid to United," she "would have

5  not purchased the travel insurance and/or would have paid less for travel insurance." (Compl. ¶

6  41.) However, she alleges no facts to show either that the Travel Guard Group would have sold

7  her insurance policy for less, or that she could have obtained a comparable policy from another

8  company for less. Conclusory allegations such as these, without facts plausibly showing that

9  comparable coverage was available at a lower premium, fail to plead an actionable loss. *See*

10  *Kauai Scuba Ctr., Inc. v. PADI Americas, Inc*., 524 F. App'x 344, 346 (9th Cir. 2013); *Peterson*

11  *v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1591 (2008) (plaintiffs who challenged sales

12  commissions on insurance policies but did not allege that "they could have bought the same

13  insurance for a lower price either directly from the insurer or from a licensed agent" could not

14  "show[ ] they suffered actual economic injury").

15     In the *Williamson* case, for example, the plaintiff sought to assert a UCL claim arising out

16  of his purchase of a set of tires from defendants' retail store. 2012 WL 1438812, at *1. The

17  gravamen of plaintiff's complaint was that he was charged an undisclosed service fee to dispose

18  of his old tires after defendants installed the newly purchased tires on his car. *Id*. In support of

19  his position that he lost money because of his actual and reasonable reliance on the nondisclosure,

20  plaintiff alleged "that he could have purchased tires from a competitor at a lower price or he could

21  have avoided the fee by disposing of the tires himself, and that therefore Defendants' scheme

22  'caused Williamson to pay an increased sum about that which he would have actually paid.'" *Id.*

23  at *8. The court found that these "hypothetical allegations . . . do not establish that Plaintiff has

24  properly pled that he actually relied on Defendants' alleged omission of the tire disposal fee." *Id*.

25  As the court there explained, "[t]hat Plaintiff *could have* purchased his tires from a competitor or

26  *could have* recycled the tires himself does not establish he *actually relied* on the alleged omission

27  when deciding where to purchase his tires." *Id*. Vallarta's allegations are similarly hypothetical

28  and conclusory.

Moreover, even assuming Vallarta's conclusory allegation that she would not have purchased the travel insurance had she known about United's compensation were sufficient to plead a loss, her allegations do not establish that the alleged statements or omissions by United were the "immediate cause" of her alleged loss.  Vallarta agreed to buy the specific insurance at a specific price, and thus relied on the quality and cost of the insurance when making her purchase, not on what other costs might allegedly be included within that price.  Again, the *Williamson* case is squarely on point.  In holding that Williamson's factual allegations "do not support a plausible inference that the alleged omission was an 'immediate cause' prompting Plaintiff to purchase and install new tires at Defendants' establishment, or that Plaintiff paid more than he was willing to pay,"  the court noted that that "[t]he parties agreed prior to the tire installation that Plaintiff would pay $216.54 for the new tires and to have the tires installed on the car.  That is the amount that Plaintiff actually paid.  The terms the Plaintiff relied on were price and quality, not on a tire disposal fee that was subsumed into the overall price."  *Id.*

Likewise here, Vallarta could have chosen not to purchase travel insurance at all.  Instead, she decided, knowing both the terms of the offered policy and the premium price, that the benefits were worth the price.  There is nothing unfair about that.  *See Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1094 (C.D. Cal. 2015) (holding "that being induced to purchase a product … is not loss of money or property [under the UCL] as long as one still receives the benefit of the bargain.'") (citation omitted).  For this reason as well, Vallarta's UCL claim must be dismissed.

## C.  <u>Vallarta Fails to State a Claim for Unjust Enrichment</u>

Under California law, a standalone cause of action for unjust enrichment is not cognizable, but "a court may construe the cause of action as a quasi-contract claim seeking restitution" as a theory of recovery on other recognized causes of action.  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 754, 762 (9th Cir. 2015); *see also Zuehlsdorf v. FCA US LLC*, No. 18-1877-JGB(KKx), 2019 WL 2098352, at *12 (C.D. Cal. Apr. 30, 2019) ("Unjust enrichment is not an independent cause of action[.]"); *Sutra Beauty, Inc. v. Duran*, No. 2:18-cv-03768-ODW(SSx), 2019 WL 688201, at *3 (C.D. Cal. Feb. 15, 2019) ("Generally, California law does not permit a standalone cause of action for unjust enrichment.").  Here, Vallarta has not

1   plausibly alleged any predicate claims on which to base an unjust enrichment theory.  As set forth

2   above, the Class Action Complaint does not state a claim under the UCL, and all of her purported

3   common law claims likewise fail (*see* Sections I.D and I.E, *infra*).  As a result, Vallarta's unjust

4   enrichment claim fails as a matter of law, and must be dismissed.  *See Girard v. Toyota Motor*

5   *Sales, U.S.A., Inc.*, 316 F. App'x 561, 563 (9th Cir. 2008) ("Girard's unjust enrichment claim also

6   fails since Toyota's non-deceptive advertising does not entitle him to restitutionary relief.");

7   *Berryman*, 152 Cal. App. 4th at 1557 (finding unjust enrichment claims based on the same facts

8   failing to state an UCL claim must fail).

9          **D.      Vallarta Fails to State a Claim for Conversion**

10          Conversion is "the wrongful exercise of dominion over the property of another."

11   *Williamson*, 2012 WL 1438812, at *4.  To establish a claim for conversion, a plaintiff must

12   establish: (1) the plaintiff's ownership or right to possession of the property at the time of

13   conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights;

14   and (3) damages.  *Id.*  Money "cannot be the subject of an action for conversion unless a specific

15   sum capable of identification is involved." *Id.*  "California cases permitting an action for

16   conversion of money typically involve those who have misappropriated, commingled, or

17   misapplied specific funds held for the benefit of others."  *Id.* (internal quotation marks omitted).

18   Thus, a claim for conversion may be stated when there is a special relationship between the

19   parties obligating the defendant to retain or apply funds on the plaintiff's behalf.  *Id.*

20          This case plainly presents no such circumstance.  The basis of Vallarta's claim is an arms-

21   length commercial transaction, which does not give rise to a "special relationship" that would

22   support a conversion claim.  *See id.* at *5.  Furthermore, Vallarta cannot establish that she had

23   "ownership or right to possession of the property at the time of conversion."  *Id.* at *4; *see also*

24   *Brighton Trustees v. Transamerica Life Ins. Co.*, No. 2:19-cv-04210-CAS(GJSx), 2019 WL

25   578495, at *10 (C.D. Cal. Nov. 4, 2019) (citing *Bastanchury v. Times-Mirror Co.*, 68 Cal. App.

26   2d 217, 236 (1945)).  According to the Class Action Complaint, if a passenger chooses to

27   purchase coverage, they pay the agreed premium for that coverage to the insurance carrier (not

28   United).  (*See* Compl. ¶ 14.)  At that point in the transaction, title to those funds passes to the

insurance carrier.  *See Williamson*, 2012 WL 1438812, at *5 (noting that once plaintiff paid the agreed price for the tires, title to those funds passed to defendants).  As a result, Vallarta cannot state a conversion claim with respect to those funds, and her conversion claim should be dismissed.

### E.   Vallarta Fails to State a Claim for Fraudulent Concealment

Vallarta bases her fraudulent concealment claim on the alleged omission from United's website of information about compensation received by United from her travel insurance policy purchase.  (Compl. ¶ 100.)  For an omission to be actionable as fraudulent concealment under California law, (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.  *Tenet Healthsystem Desert, Inc. v. Blue Cross of Cal.*, 245 Cal. App. 4th 821, 844 (2016); *Baird v. Samsung Elecs. Am., Inc.*, No. C 17-06407 JSW, 2018 WL 4191542, at *7 (N.D. Cal. July 20, 2018) (same).  Plaintiff must plead these elements with the specificity required by Rule 9(b).  *See Ahern v. Apple Inc.*, No. 18-CV-07196-LHK, 2019 WL 5102621, at *14 (N.D. Cal. Oct. 11, 2019).

Vallarta has not pleaded facts showing any of the elements of this claim are met here.  In particular, as previously discussed, Vallarta has not alleged any basis to find that United had a duty to disclose the alleged (and unsurprising) fact that it receives compensation from third parties who market products on its website.  *See supra* at 9.  Nor has Vallarta adequately alleged that she sustained any damages as a result of the alleged concealment of that fact.  *Supra* at 9-11. Vallarta's claim for fraudulent concealment must be dismissed.

## II.   THIS COURT LACKS JURISDICTION OVER THE CLAIMS ASSERTED BY SALMONS AND THE PUTATIVE CONNECTICUT CLASS

Plaintiff Salmons is a Connecticut resident who does not allege any connection between her purchase of travel insurance from United's website and this forum; indeed, Salmons

-13-      4:19-cv-5895 HSG

apparently purchased her travel insurance policy in Connecticut, because she seeks to represent a putative class of "persons who purchased a travel insurance policy on United's website in the State of Connecticut." (*See* Compl. ¶¶ 4, 55, 67, 83, 98.)  As set forth below, Salmons's claims, and the claims of the members of the putative Connecticut class, lack the minimum contacts with this forum necessary for this Court to exercise personal jurisdiction over United, and those claims must therefore be dismissed pursuant to Federal Rule 12(b)(2).

### A.   Legal Standard

Federal Rule 12(b)(2) requires dismissal of an action when the court lack personal jurisdiction over the defendant.  If a defendant challenges the existence of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the defendant.  *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011).

A district court sitting in diversity applies the law of the forum state in determining whether personal jurisdiction is proper.  *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)).  The California long-arm statute provides that its reach is coextensive with the limits placed on the states by the U.S. Constitution.  Cal. Code Civ. Proc. § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.").  Therefore, whether United is susceptible to jurisdiction in California turns on whether the requirements of the Constitution's Due Process Clause are satisfied.  *Picot*, 780 F.3d at 1211.

To satisfy due process, a defendant must have certain "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Id*. (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945)).  The minimum contacts requirement "protects the defendant against the burdens of litigating in a distant and inconvenient forum" by requiring that the "defendant's conduct and connection with the forum State [be] such that [a defendant] should reasonably anticipate being haled into court there."  *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92, 297 (1980) (citations omitted).

Personal jurisdiction can exist in one of two forms: specific jurisdiction or general

1    jurisdiction. *Bristol-Myers*, 137 S. Ct. at 1779-80. General jurisdiction applies where the

2    defendant's contacts with the forum are "continuous and systematic" but are not related to the

3    plaintiff's cause of action. *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017). "The standard

4    for general jurisdiction 'is an exacting standard, as it should be, because a finding of general

5    jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its

6    activities anywhere in the world.'" *Mavrix Photo, Inc. v. Brand Techs., Inc*., 647 F.3d 1218, 1224

7    (9th Cir. 2011) (quoting *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 801 (9th Cir.

8    2004)). A court has general jurisdiction over a corporate defendant only in the state (or states)

9    where that defendant is "at home"—that is, in the state or states where it is incorporated and/or

10   has its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014).

11   United is incorporated in Delaware and has its principal place of business in Illinois. *See Khouri*

12   *v. United Airlines, Inc*., 32 F. App'x 318, 319 (9th Cir. 2002). Therefore, United is subject to

13   general jurisdiction only in Delaware and Illinois, not California.

14       Specific jurisdiction, on the other hand, requires that the suit "arise out of or relate to the

15   defendant's contacts with the *forum*." *Bristol-Myers*, 137 S. Ct. at 1780 (emphasis in original).

16   As the Ninth Circuit has stated, whether a court may assert specific jurisdiction over a

17   nonresident defendant "focuses on the relationship among the defendant, the forum, and the

18   litigation." *Axiom Foods, Inc. v. Acerchem Int'l, Inc*., 874 F.3d 1064, 1068 (9th Cir. 2017)

19   (quotation and citation omitted). "[T]he defendant's suit-related conduct must create a substantial

20   connection with the forum State." *Id*. (quotation and citation omitted). Three requirements must

21   be met: "(1) the defendant must either purposefully direct his activities toward the forum or

22   purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim

23   must be one which arises out of or relates to the defendant's forum-related activities; and (3) the

24   exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be

25   reasonable." *Id*. (quotation and citations omitted).

26       **B.    The Claims of Salmons and the Putative Connecticut Class Lack the
                 Minimum Contacts With this Forum Necessary for the Court to Exercise
27               Jurisdiction Over United**

28       This case concerns the second, relatedness requirement, which ensures that "specific

                                    -15-        4:19-cv-5895 HSG

1    jurisdiction is confined to adjudication of issues deriving from, or connected with, the very

2    controversy that establishes jurisdiction." *Bristol-Myers*, 137 S. Ct. at 1780 (internal quotation

3    marks omitted).  This requirement is plainly not met with regard to Salmons or the members of

4    the putative Connecticut class.  There are no allegations that Salmons purchased her travel

5    insurance policy in California, saw language on United's website while in California, or suffered

6    any injury in California.  In short, there are no allegations that Salmons's claims relate to this

7    forum in any way.  To the contrary, by seeking to represent a putative class of persons who

8    purchased insurance policies through United's website "in the State of Connecticut," Salmons

9    effectively alleges that the transaction on which she bases her claims and the claims of the

10   putative Connecticut class took place in Connecticut, not California.  (*See* Compl. ¶¶ 4, 55, 83.)

11          In *Bristol-Myers,* the Supreme Court considered a mass tort action in which 592 of the

12   678 plaintiffs had no connections with the forum state other than the fact that their claims were

13   "similar in several ways" to the claims of the resident plaintiffs.  137 S. Ct. at 1778, 1779.  The

14   Supreme Court rejected the state court's assertion of jurisdiction over the nonresident plaintiffs'

15   claims, holding that it would be unfair to require the defendant to appear in the forum to answer

16   the nonresident plaintiffs' claims because constitutional due process requires "a connection

17   between the forum and the *specific claims at issue." Id*. at 1781 (emphasis added).  The Court

18   found that the defendant's due process rights would be violated through an exercise of personal

19   jurisdiction over it with respect to nonresidents' claims based on injuries outside the forum.  *Id*. at

20   1780-84.  "This remains true," the Court explained, "even when third parties ... can bring claims

21   similar to those brought by the nonresidents." *Id*. at 1781.

22          The fact that Salmons seeks to represent a class does not lead to a different result.

23   Numerous district courts have found that the holding of *Bristol-Myers* applies to a nonresident

24   named plaintiff in a putative class action seeking to assert claims against a nonresident defendant

25   based on alleged injuries occurring outside the forum.  *See, e.g.*, *In re Samsung Galaxy*

26   *Smartphone Mktg. and Sales Practices Litig.*, No. 16-cv-06391-BLF, 2018 WL 1576457, at *2

27   (N.D. Cal. March 30, 3018); *Hickman v. TL Transp., LLC*, 317 F. Supp. 3d 890, 898-99 (E.D. Pa.

28   July 12, 2018); *Horowitz v. AT&T Inc.,* No. 3:17-cv-4827-BRM(LHG), 2018 WL 1942525, *13-

16 (D.N.J. Apr. 25, 2018); *Greene v. Mizuho Bank, Ltd.*, 289 F. Supp. 3d 870, 874 (N.D. Ill. Dec. 11, 2017)).  Because the claims asserted by Salmons on behalf of herself and a putative Connecticut class do not have a sufficient connection to this forum to meet the constitutional requirements of due process, the Court does not have personal jurisdiction over United to adjudicate those claims, and they must therefore be dismissed.

### III.   THIS COURT LACKS JURISDICTION OVER THE ASSERTED CLAIMS OF NON-RESIDENT MEMBERS OF THE PUTATIVE NATIONWIDE CLASS

In addition to the claims that each Plaintiff seeks to assert on behalf of a single-state class (California for Vallarta and Connecticut for Salmons), both Plaintiffs seek to assert claims for unjust enrichment, conversion and fraudulent concealment on behalf of a putative nationwide class.  (*See* Compl. ¶¶ 66-72, 93-96, 97-107.)  Because this Court does not have personal jurisdiction over United with respect to claims that do not have a sufficient connection to this forum—*i.e.*, the claims of persons who purchased a travel insurance policy on United's website in a state other than California—the Court should strike the nationwide class allegations from the Class Action Complaint.

As discussed above, the Supreme Court held in *Bristol-Myers* that, to assert personal jurisdiction over an out-of-state defendant to adjudicate multiple plaintiffs' claims, the necessary minimum contacts must exist not just for *some* plaintiffs' claims, but for *every* plaintiff's claim. The Supreme Court found that the defendant's due process rights would be violated through an exercise of personal jurisdiction over it with respect to nonresidents' claims based on injuries outside the forum.  *Id*. at 1780-84.  "This remains true," the Court explained, "even when third parties ... can bring claims similar to those brought by the nonresidents."  *Id*. at 1781.

Although *Bristol-Myers* was a mass action, its fundamental holding is equally applicable to the claims that Plaintiffs here seek to assert on behalf of a putative nationwide class.  The Due Process Clause does not and should not afford a defendant different protections depending on whether the individual asserting a claim is a named plaintiff or an absent member of a putative nationwide class.  A Rule 23 class action is simply a procedural device that "enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits."  *Shady Grove*

1    *Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010) (plurality opinion).

2    Pursuant to the Rules Enabling Act, Rule 23 may not be used to alter substantive rights.

3    Therefore, plaintiffs cannot use the class-action procedural device to make an end-run around the

4    due process constraints on specific personal jurisdiction. *See Wal-Mart Stores, Inc. v. Dukes*, 564

5    U.S. 338, 367 (2011) (enforcing the Rules Enabling Act's command in the class-action context by

6    refusing to permit class certification that would prevent the defendant from litigating a statutory

7    defense to individual claims); 2 Newberg on Class Actions § 6:26 (5th ed.) ("If the class prevails

8    in the case, the goal is a binding judgment over the defendant as to the claims of the entire

9    nationwide class," which "triggers a defendant's right to *class-wide due process*, that is, its right

10   to ensure the requisite territorial connection between it and the court as to the full scope of its

11   liability.") (emphasis added).

12        Thus, as one district court explained, "[t]he Supreme Court held in *Bristol-Myers* that the

13   Fourteenth Amendment's due process clause precludes nonresident plaintiffs injured outside the

14   forum from aggregating their claims with an in-forum resident.  Under the Rules Enabling Act, a

15   defendant's due process interest should be the same in the class context." *Practice Mgmt.*

16   *Support Servs., Inc. v. Cirque du Soleil, Inc.*, 301 F. Supp. 3d 840, 861 (N.D. Ill. 2018) (citation

17   omitted).  Following this reasoning, numerous district courts have recognized since *Bristol-Myers*

18   that "the Due Process Clause of the Fourteenth Amendment precludes the exercise of personal

19   jurisdiction over a defendant in a putative class action where nonresident, absent members seek to

20   aggregate their claims with an in-forum resident, even though the defendant allegedly injured the

21   nonresidents outside of the forum." *Mussat v. IQVIA Inc.*, No. 17 C 8841, 2018 WL 5311903, at

22   *3, *6 (N.D. Ill. Oct. 26, 2018) (holding that Rules Enabling Act requires "consistent and uniform

23   application of defendants' due process rights" between "class actions under Rule 23" and

24   "individual or mass actions").[3]  Applying that principle to the circumstances presented here, it is

25

26   [3] *See also, e.g.*, *Leppert v. Champion Petfoods USA Inc.*, No. 18 C 4347, 2019 WL 216616, at *4 (N.D. Ill. Jan. 16, 2019); *Maclin v. Reliable Reports of Texas, Inc.*, 314 F. Supp. 3d 845, 849

27   (N.D. Ohio 2018); *McDonnell v. Nature's Way Prods., LLC*, No. 16 C 5011, 2017 WL 4864910, at *4 (N.D. Ill. Oct. 26, 2017)*; In re Dental Supplies Antitrust Litig.*, No. 16 Civ. 696, 2017 WL

28   4217115, at *9 (E.D.N.Y. Sept. 20, 2017).

1   apparent that this Court cannot exercise specific personal jurisdiction over United with respect to

2   the claims of the putative nationwide class.[4]  Those putative class members who are residents of a

3   state other than California do not have claims that arise out of United's activities in California,

4   and it is therefore a violation of United's due process rights for this Court to assert personal

5   jurisdiction over United for purposes of litigating those plaintiffs' claims.  The Court should

6   therefore strike the nationwide class allegations from the Class Action Complaint.

7   **IV.    THE COMPLAINT DOES NOT PLEAD ANY COGNIZABLE CLAIM BY
        SALMONS**

8

9           Separate and apart from the question of this Court's jurisdiction, the Class Action

10   Complaint fails to sufficiently plead any claim by Salmons.  For that additional and independent

11   reason, Salmons's claims should be dismissed.

12           **A.     Salmons Fails to State a CUTPA Claim**

13           To state a claim under CUTPA (*see* Class Action Complaint, Third Cause of Action),

14   Salmons must plausibly allege that United "engage[d] in unfair methods of competition and

15   unfair deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat.

16   § 42-110b (a).  She must also plausibly allege that she suffered an "ascertainable loss of money or

17   property" as a result of United's prohibited act or practice. Conn. Gen. Stat. § 42-110g(a).  The

18   Third Cause of Action should be dismissed because the conduct alleged by Salmons, assuming it

19   occurred, would not violate Connecticut law, and because Salmons fails sufficiently to allege that

20   she suffered an ascertainable loss under CUTPA.

21           **1.     Salmons Fails to Allege an Unfair or Deceptive Act or Practice**

22           Salmons's CUTPA claim, like Vallarta's UCL claim, is premised on the theory that

23   United violates state insurance laws by receiving payments from insurance carriers that offer

24   ---
    [4] Although district courts have almost uniformly agreed that the holding of *Bristol-Myers* applies
    to class actions where the defendant allegedly injured the named plaintiff outside the forum (*see,
25   e.g.*, *Hickman*, 317 F. Supp. 3d at 898-99; *Horowitz*, 2018 WL 1942525, at *13-16; *Greene*, 289
    F. Supp. 3d at 874), courts have disagreed about whether *Bristol-Myers* controls in class actions
26   beyond the named plaintiff situation.  *See, e.g.*, *Gress v. Freedom Mortg. Corp.*, 386 F. Supp. 3d
    455, 464 (M.D. Pa. 2019).  No federal appellate court has yet decided the issue, although it is
27   currently pending before the D.C. Circuit in a case in which oral argument was held on
    September 25, 2019.  *See Molock v. Whole Foods Mkt., Inc.*, Case No. 18-7162 (D.C. Cir.), Dkt.
28   # 1807990.

1  travel insurance to United's customers through United's website.  (*See* Compl. ¶¶ 84-85.)  The

2  Connecticut Supreme Court has recognized, however, that the Connecticut Unfair Insurance

3  Trade Practices Act ("CUIPA") "provides the exclusive and comprehensive source of public

4  policy with respect to general insurance practices" in Connecticut and that, as a result, "unless an

5  insurance related practice violates CUIPA," it generally cannot support a claim under CUTPA.

6  *State of Connecticut v. Acordia, Inc.*, 73 A.2d 711, 732 (Conn. 2013).  Salmons does not allege,

7  and cannot allege, the United has violated the CUIPA.  And while the *Acordia* Court noted that an

8  insurance related practice that allegedly violates "some other statute regulating a specific type of

9  insurance related conduct" might "arguably" support a CUTPA violation, United has found no

10  case finding a CUTPA violation based on an alleged violation of the licensing provisions on

11  which Salmons's claim relies.

12      Moreover, Connecticut law, like California law, expressly *permits* airlines and other travel

13  retailers to "receive compensation from a limited lines travel insurance producer or the insurance

14  company issuing a travel insurance policy for services related to the offer and dissemination of

15  travel insurance as agreed to by such designated travel retailer and such limited lines travel

16  insurance producer…."  Conn. Gen. Stat. § 38a-398(c)(1)(3).  Those statutory provisions—

17  adopted by the Connecticut General Assembly on June 7, 2017 and signed by the Governor on

18  July 10, 2017[5]—establish that the alleged practice on which Salmons purports to base her

19  CUTPA claim does not "offend," but rather is consistent with, the public policy of the state of

20  Connecticut. *See Acordia, Inc.*, 73 A.2d at 732 (observing that whether a business practice

21  violates CUTPA depends on whether the practice "offends public policy") (internal quotation

22  marks omitted).

23      Finally, CUTPA itself expressly exempts from its application "[t]ransactions or actions

24  otherwise permitted under law as administered by any regulatory board or officer acting under

25  statutory authority of the state or of the United States."  Conn. Gen. Stat. § 42-110c.  The alleged

26

27  _____
[5] *See*
https://www.cga.ct.gov/asp/cgabillstatus/cgabillstatus.asp?selBillType=Bill&bill_num=7024&which_year=2017

28

1    conduct by United that Salmons challenges is both permitted by law as noted above, and

2    regulated by the Connecticut Insurance Commissioner.  *See, e.g.*, Conn. Gen. Stat. § 38a-

3    398(b)(1)(A).  Consequently, Salmons cannot state a CUTPA claim and the Class Action

4    Complaint's Third Cause of Action must be dismissed.  *See, e.g.*, *Wind Corporation v. Wesko*

5    *Locks, Ltd.,* No. 3:18-cv-292(AWT), 2018 WL 8729585, at * 4-5 (D. Conn. Aug. 24, 2018)

6    (dismissing CUTPA claim because the transactions at issue were permitted and otherwise

7    regulated by statute, and therefore fell within the exception in Section 42-110c(a)(1)).

8    **2.**    <u>**Salmons Fails to Allege an Ascertainable Loss as a Result of the Alleged**</u>
        <u>**Practice**</u>

9

10    In addition, Salmons fails to state a CUTPA claim because her allegations are devoid of

11    facts showing that she suffered an ascertainable loss as a result of the alleged conduct she

12    challenges.  The ascertainable loss element is "a threshold barrier which limits the class of

13    persons who may bring a CUTPA action seeking either actual damages or equitable relief."

14    *Larobina v. Wells Fargo Bank, N.A.*, No. 3:10-cv-01279 (MPS), 2014 WL 3419534, at *1 (D.

15    Conn. July 10, 2014) (internal quotation marks omitted).  "Thus, to be entitled to any relief under

16    CUTPA, a plaintiff must first prove that he has suffered an ascertainable loss due to a CUTPA

17    violation."  *Id.* (internal quotation marks omitted).  An "ascertainable loss" is a deprivation,

18    detriment or injury that is 'capable of being discovered, observed or established.'"  *Id.* (quoting

19    *Marinos v. Poirot*, 66 A.3d 860, 866 (Conn. 2013)).

20    Rather than setting forth facts that would establish such a loss, Salmons relies on

21    conclusory and hypothetical allegations about the supposed availability of cheaper insurance.

22    (*See* Compl. ¶ 42.)  Salmons does not, however, allege that the insurance policy she received was

23    in any way different from the policy for which she had bargained.  *Contra Hinchliffe v. American*

24    *Motors Corp.*, 440 A.2d 810, 814 (Conn. 1981) (holding that a plaintiff satisfies the

25    "ascertainable loss" requirement when he proves "that he has purchased an item partially as a

26    result of an unfair or deceptive practice or act and that the item is different from that for which he

27    bargained")*.*  Nor does she plausibly allege that her purchase of a travel insurance policy was "a

28    result of" United's nondisclosure of the alleged fact that it receives compensation from third

-21-        4:19-cv-5895 HSG

1   parties who market their products on its website.  For this reason as well, Salmons's CUTPA

2   claim should be dismissed.

3           **B.        Salmons Fails to State a Claim for Unjust Enrichment.**

4           In Connecticut, the success of an unjust enrichment cause of action is dependent upon

5   whether (1) the defendant was benefited, (2) the defendant unjustly failed to pay the plaintiff for

6   the benefits, and (3) the failure of payment was to the plaintiff's detriment.  *Gagne v. Vaccaro*,

7   766 A.2d 416, 428 (Conn. 2001).  In this case, Salmons has not identified a specific "benefit" that

8   United has retained to her detriment.  Salmons does not identify what specific loss she incurred as

9   a result of her purchase of the trip insurance, or any nexus between that alleged loss and any

10  alleged benefit retained by United.  Salmons does not allege that the travel insurance policy she

11  received was somehow deficient or worth less than what she paid.  And even if she were to claim

12  that the "benefit" that United received was the alleged commission paid by the third-party insurer

13  to United, she fails to plausibly allege that United's retention of that "benefit" is inequitable given

14  that Connecticut law expressly allows United to receive such compensation.  Without allegations

15  plausibly connecting some sort of ill-gotten benefit to an alleged detriment to Salmons, her unjust

16  enrichment claim must fail.

17          **C.        Salmons Fails to State a Claim for Conversion**

18          Salmons's claim for conversion also fails, as she does not "point to specific, identifiable

19  money to which [she] had a right of possession." *Macomber v. Travelers Property and Cas.*

20  *Corp.*, 804 A.2d 180, 200 (Conn. 2002).  In Connecticut, conversion is "an unauthorized

21  assumption and exercise of the right of ownership over property belonging to another, to the

22  exclusion of the owner's right."  *Mystic Color Lab, Inc. v. Auctions Worldwide LLC*, 934 A.2d

23  227, 234 (Conn. 2007).

24          Salmons's conclusory allegations in Count IV do not pass muster under federal pleading

25  standards, as she is silent on the required temporal aspect of conversion.  (Compl. ¶¶ 94-96; Fed.

26  R. Civ. P. 12(b)(6).)  Although money can be subject to conversion—a cause of action that is akin

27  to theft in Connecticut—a plaintiff must still establish "*legal ownership or right to possession of*

28  *specifically identifiable moneys*…[that] at all times belonged to the plaintiff."  *Deming v.*

1    *Nationwide Mutual Ins. Co.*, 905 A.2d 623, 640 (2006) (emphasis in original).  Salmons does not

2    allege that she had an identifiable ownership right to the funds she paid for her travel insurance

3    policy after she tendered that payment to the insurance carrier (not United).  She also does not

4    identify specific monies United allegedly "converted to [its] own use"; at most, she appears to be

5    seeking the unspecified difference between what she paid for her policy and what she allegedly

6    could have paid for some other, hypothetical travel insurance policy.  (Compl. ¶ 41.)   Salmons's

7    conversion claim should accordingly be dismissed.  *See Deming*, 905 A.2d at 640.

8            **D.      Salmons Fails to State a Claim for Fraudulent Concealment**

9            Fraudulent concealment is not an independent cause of action under Connecticut law.

10   *McCullough v. World Wrestling Entertainment, Inc.*, 172 F.Supp.3d 528, 560 (D. Conn. 2016)

11   ("WWE is correct that fraudulent concealment is not a separate cause of action.") (collecting

12   cases).  Rather, fraudulent concealment is primarily utilized to toll a statute of limitations, which

13   Salmons has not raised as an issue in this case.  *Carson v. Allianz Life Ins. Co. of North America*,

14   194 A.3d 1214, 1220-21 (Conn. Ct. App. 2018).  Salmons's fraudulent concealment claim should

15   therefore be dismissed.

16   **V.     THE AIRLINE DEREGULATION ACT PREEMPTS PLAINTIFFS' CLAIMS**

17           Congress enacted the ADA to, among other things, promote "efficiency, innovation, and

18   low prices" in the airline industry through "maximum reliance on competitive market forces and

19   on actual and potential competition" rather than regulation.  49 U.S.C. § 40101(a)(6), (a)(12).  To

20   "prevent the States from undoing what the [ADA] was meant to accomplish," *Northwest, Inc. v.*

21   *Ginsberg*, 572 U.S. 273, 283 (2014), Congress included in the ADA a broad preemption

22   provision.  *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378-79, 383 (1992).

23           The ADA preempts state-law claims that are "related to" – that is, those that have "a

24   connection with, or reference to" – an airline's prices, routes, or services.  *Ginsberg*, 572 U.S. at

25   284 (citation omitted); *see also Morales*, 504 U.S. at 383 (stating that the ADA expresses a broad

26   pre-emptive purpose that prevent litigants from asserting claims against an airline related to the

27   airline's prices, routes or services).  The Supreme Court has recognized only a single, narrow

28

                                    -23-          4:19-cv-5895 HSG

exception to ADA preemption: the ADA does not preempt breach of contract claims that seek

only to enforce the airline's own promise, "with no enlargement or enhancement based on state

laws or policies external to the agreement." *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 232-33

(1995). Thus, unless they fall within the limited *Wolens* exception, matters related to an airline's

prices, routes, or services are left to regulation by the United States Department of Transportation

("DOT") and to market forces. *Morales*, 504 U.S. at 390-91.

The types of claims asserted by Plaintiffs here are plainly outside the scope of the *Wolens*

exception. *See, e.g.*, *Wolens*, 513 U.S. at 227-28 (ADA preempts consumer fraud act claims);

*Sanchez v. Aerovias De Mexico, S.A. De C.V.*, 590 F.3d 1027, 1030-31 (9th Cir. 2010) (putative

class claims asserting breach of implied covenant of good faith and fair dealing, unjust

enrichment, and money had and received preempted by the ADA); *Alaska Airlines Inc. v. Carey*,

395 F. App'x 476, 478 (9th Cir. 2010) (counterclaims asserting fraud and other related state law

claims  preempted by the ADA); *In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 696-97 (9th Cir.

2011) (putative class claims based on California state unfair competition and unfair business

practices laws preempted by the ADA); *Banga v. Gundumolgula*, No. 2:13-CV-00667-MCE,

2013 WL 3804046, at *3 (E.D. Cal. July 19, 2013) (dismissing UCL-based claims as preempted

by the ADA, finding that challenges relating to a refund policy and fee waivers are part of the

reservations and ticketing process, and that "[u]nfair business practice laws, such as UCL, have

consistently been found preempted by the ADA"), *report and recommendation adopted*, No.

213CV0667MCDCKDPS, 2013 WL 11332786 (E.D. Cal. Sept. 12, 2013); *Rivera v. JetBlue

Airways Corp.*, No. 3:17-CV-00960, 2018 WL 264735, at *2 (D. Conn. Jan. 2, 2018) (CUTPA

claims preempted by the ADA);  *Brown v. United Airlines, Inc.*, 720 F.3d 60, 70-71 (1st Cir.

2013) (ADA preempts unjust enrichment claims); *Levitt v. Sw. Airlines Co.*, 846 F. Supp. 2d 956,

960 (N.D. Ill. 2012) (same).

Furthermore, Plaintiffs' own allegations closely tie the offering of travel insurance to

United's customers through its website to both the fees that United charges for changing or

cancelling a flight and the flight booking and ticketing process.  (*See, e.g.*, Compl. ¶¶ 11, 13, 17-

20, 27, 35.)  Plaintiffs' claims challenging that alleged activity thus clearly relate to both United's

1    prices and its services.  *See Arapahoe Cty. Pub. Airport Auth. v. F.A.A.,* 242 F.3d 1213, 1222

2    (10th Cir. 2001) (identifying "ticketing" as a service under the ADA); *Bower v. Egyptair Airlines*

3    *Co.*, 731 F.3d 85, 94 (1st Cir. 2013) (holding that airline ticketing is a service under the ADA);

4    *Shrem v. Sw. Airlines Co*., No. 15-cv-04567-HSG, 2016 WL 4170462, at *3 (N.D. Cal. Aug. 8,

5    2016) (holding that claims challenging airline's alleged forfeiture of passengers' credits from

6    previously cancelled flights were preempted); *Statland v. Am. Airlines, Inc.*, 998 F.2d 539, 541-42

7    (7th Cir. 1993) (holding that ADA preempted claims challenging ticket cancellation fee).

8    Plaintiffs' claims are therefore preempted by the ADA and must be dismissed.

9                                    <u>**CONCLUSION**</u>

10         For the foregoing reasons, United respectfully requests that this Court dismiss this action

11   in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).  In the alternative, United

12   requests that the Court dismiss the claims asserted by Salmons, on behalf of herself and a putative

13   Connecticut class, for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure

14   12(b)(2), and strike Plaintiff's allegations of a putative nationwide class.

15    Dated: November 27, 2019.                    RILEY SAFER HOLMES & CANCILA LLP

16

17                                          By: /s *Rachel F. Sifuentes*

18                                              Sondra Hemeryck
                                                shemeryck@rshc-law.com
19                                              Azar Alexander
                                                aalexander@rshc-law.com
20                                              Rachel F. Sifuentes
                                                rsifuentes@rshc-law.com
21
                                                Attorneys for Defendant
22                                              UNITED AIRLINES, INC.

23

24

25

26

27

28