UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANA VALLARTA, et al., | Case No. 19-cv-05895-HSG |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |
| v. | |
| UNITED AIRLINES, INC., | Re: Dkt. No. 19 |
| Defendant. | |

Pending before the Court is Defendant United Airlines' motion to dismiss. Dkt. No. 19. The Court held a hearing on February 12, 2020.[1] *See* Dkt. No. 48. For the reasons detailed below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss.

## I.   BACKGROUND

Plaintiffs Diana Vallarta and Lisa Salmons filed this putative class action on September 20, 2019. *See* Dkt. No. 1 ("Compl."). Plaintiff Vallarta is a resident of San Jose and a citizen of California, and Plaintiff Salmons is a resident of Stamford, Connecticut. *See id.* at ¶¶ 3, 4. Plaintiffs allege that Defendant offers optional, third-party travel insurance to its customers for purchase during the online ticketing process. *See id.* at ¶¶ 1, 14–15. After a customer selects her flight, but before she can complete the purchase, Defendant's website requires the customer to decide whether to purchase travel insurance. *Id.* at ¶¶ 19–20, 22–27, 29–35. During this selection process, Defendant's website "encourages" and "urg[es] consumers to purchase travel insurance"

---

[1] At the parties' request, this case was stayed from March to August 2020 while the parties attempted to settle several actions pending against Defendant around the country related to third-party travel insurance. *See, e.g.*, Dkt. Nos. 56, 57. However, on August 11, 2020, the Court held a case management conference and declined to stay the case further. *See* Dkt. No. 60. The Court therefore now addresses this pending motion.

United States District Court
Northern District of California

by, for example, including "a quote from Frommer's noting that '[i]t's wise to always consider a travel protection plan to cover your trip costs from the unexpected'; the 'Top 4 reasons you need travel insurance'; and an 'Important Fact' noting the high out-of-pocket costs associated with medical emergency transportation." *See id.* at ¶¶ 1, 14, 24, 29–31, 34.

Prior to October 2017, the website noted that the travel insurance policy would be underwritten by the Allianz group. *See id.* at ¶¶ 24, 26. For customers who then purchased the travel insurance, the receipt indicated that the specific amount charged "would be '[b]illed separately by Allianz Global Assistance.'" *Id.* at ¶ 28. After October 2017, the website indicated that "[c]overage is offered by Travel Guard Group, Inc." *See id.* at ¶¶ 34–35. If purchased, the receipt similarly stated that the specific amount charged will be "'[b]illed separately by Travel Guard Group, Inc.'" *Id.* at ¶ 35–36.

However, Plaintiffs allege that Defendant has an undisclosed financial interest in the sale of this travel insurance. *See id.* at ¶¶ 1, 37. If a customer purchases third-party travel insurance through Defendant's website, the insurer either pays part of the purchase price back to Defendant or allows Defendant to retain some portion of the purchase price "in exchange for helping broker the insurance sale." *See id.* at ¶ 14. Plaintiffs refer to this interchangeably as a "commission," "brokerage fee," or "kickback." *See, e.g., id.* at ¶¶ 13–15, 39. Yet according to the complaint, at no point during the purchase process or in the insurance policy itself does Defendant disclose that it receives money as part of the travel insurance transaction. *See id.* at ¶¶ 38–39. To the contrary, Plaintiffs allege that Defendant's website "repeatedly indicat[es] that Allianz or the Travel Guard Group will be the sole recipient of Plaintiff's travel-insurance payments." *See id.* at ¶ 40. Plaintiffs contend that had they known, they "would not have purchased the travel insurance and/or would have paid less for travel insurance." *Id.* at ¶¶ 41–42, 47.

Based on these allegations, Plaintiffs bring claims for (1) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (2) violations of Connecticut's Unfair Trade Practices Act ("CUTPA"), Conn. Gen. State. Ann. § 42-110b; (3) unjust enrichment; (4) conversion; and (5) fraudulent concealment. *See id.* at ¶¶ 66–107. Plaintiffs also seek to represent a nationwide class of "[a]ll persons who purchased a travel

insurance policy on United's website in the United States within the applicable limitations period"; a California subclass of "[a]ll persons who purchased a travel insurance policy on United's website in the State of California within the applicable limitations period"; and a Connecticut subclass of "[a]ll persons who purchased a travel insurance policy on United's website in the State of Connecticut within the applicable limitations period." *See id.* at ¶¶ 53–55.

Defendant moves to dismiss Plaintiff Salmons' claims for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2); to strike the nationwide class and Connecticut subclass allegations; and to dismiss all remaining causes of action under Federal Rule of Civil Procedure 12(b)(6).

## II.   LEGAL STANDARD

### A.   Rule 12(b)(2)

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  Where, as here, the motion is based on written materials rather than an evidentiary hearing, Plaintiffs need only make a "prima facie showing of jurisdictional facts." *Bauman v. DaimlerChrysler*, 579 F.3d 1088, 1094 (9th Cir. 2009), *vacated on other grounds*, 603 F.3d 1141 (9th Cir. 2010) (quotations omitted).  "Any greater burden such as proof by a preponderance of the evidence would permit a defendant to obtain a dismissal simply by controverting the facts established by a plaintiff through his own affidavits and supporting materials." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).  A prima facie showing "must be based on affirmative proof beyond the pleadings, such as affidavits, testimony or other competent evidence of specific facts." *Excel Plas, Inc. v. Sigmax Co., Ltd.*, No. 07-CV-578-IEG, 2007 WL 2853932 (S.D. Cal. Sept. 27, 2007) (citing 4 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1067.6 (3rd ed. 2002)).  "Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quotations omitted).

//

1

**B.      Rule 12(b)(6)**

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 9(b) imposes a heightened pleading standard where fraud is an essential element of a claim.  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).  A plaintiff must identify "the who, what, when, where, and how" of the alleged conduct, so as to provide defendants with sufficient information to defend against the charge.  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).  Yet even if the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

//

4

1    **III.    ANALYSIS**

2        **A.    Personal Jurisdiction over Plaintiff Salmons' Claims**

3            As a threshold matter, Defendant contends that the Court lacks personal jurisdiction over

4    nonresident Plaintiff Salmons' claims.  In response, Plaintiffs proffer three alternative bases under

5    which the Court has jurisdiction:  (1) general jurisdiction based on "exceptional circumstances";

6    (2) specific jurisdiction based on Defendant's website directed to California customers; and

7    (3) supplemental jurisdiction because the Connecticut claims "arise[] out of a common nucleus of

8    operative facts" with the California claims properly before the Court.  *See* Dkt. No. 29 at 15–18.

9                **i.    General Jurisdiction**

10           A court may exercise general jurisdiction only when the defendant's "affiliations with the

11   State are so 'continuous and systematic' as to render [the defendant] essentially at home in the

12   forum State."  *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear Dunlop Tires*

13   *Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  For corporate defendants like Defendant,

14   the place of incorporation and the principal place of business are the "paradigm" fora for general

15   jurisdiction.  *Id.* at 137.  In a footnote in *Daimler*, the Supreme Court left open "the possibility that

16   in an exceptional case . . . a corporation's operations in a forum other than its formal place of

17   incorporation or principal place of business may be so substantial and of such a nature as to render

18   the corporation at home in that State."  *Id.* at 139, n.19.  In doing so, the Supreme Court identified

19   *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952), as a case that might be exceptional.

20   *See id.*  In *Perkins*, the defendant company was incorporated under the laws of the Philippines; had

21   ceased its operations there during the Japanese occupation in World War II; and its president

22   moved to Ohio, where he kept an office, maintained the company's files, and oversaw the

23   company's activities.  *Perkins*, 342 U.S. at 447–48.  As the Supreme Court later explained,

24   exercising general jurisdiction in these circumstances was proper because "Ohio was the

25   corporation's principal, if temporary, place of business."  *See Daimler*, 571 U.S. at 130 (quotation

26   omitted).

27           As Plaintiffs allege, and Defendant appears to concede, Defendant is a Delaware

28   corporation with its principal place of business in Chicago, Illinois.  *See* Compl. at ¶ 5.  Plaintiffs

United States District Court
Northern District of California

1   nevertheless contend that Defendant conducts substantial business in California through two "hub

2   airports" located in the state and by employing "a substantial number of employees in California."

3   *See* Dkt. No. 29 at 15.  Yet such circumstances are hardly "exceptional," and the Supreme Court

4   has recognized that general jurisdiction does not lie just because a defendant "engages in a

5   substantial, continuous, and systematic course of business" in the forum.  *See Daimler*, 571 U.S. at

6   138–39.  Defendant may have some operations in California, but "[a] corporation that operates in

7   many places can scarcely be deemed at home in all of them."  *See id.* at 139, n.20.  And here,

8   Defendant's website, which Plaintiffs ask the Court to consider, identifies six other "hub airports,"

9   seven "key airports," and approximately sixty other partner airports, all located around the world.[2]

10   This is insufficient to establish that this Court may properly exercise general jurisdiction over

11   Defendant.[3]

12          ii.     **Specific Jurisdiction**

13   Plaintiffs next contend that the Court may exercise specific jurisdiction over Defendant

14   because all the claims in this action arise out of Defendant's California-related activities.  In order

15   for a nonresident defendant to be subject to the personal jurisdiction of a court, "(1) the defendant

16   must either purposefully direct his activities toward the forum or purposefully avail himself of the

17   privileges of conducting activities in the forum; (2) the claim must be one which arises out of or

18   relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must

19   comport with fair play and substantial justice, *i.e.* it must be reasonable."  *Axiom Foods, Inc. v.*

20   *Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quotation omitted).

21   Plaintiffs argue that Defendant advertised travel insurance "on websites available  to and

22   directed at California residents" and "does a significant amount of business with California

23   consumers."  *See* Dkt. No. 29 at 16–17.  Yet this argument sidesteps the key issue before the

---

[2] *See* UNITED, https://www.united.com/ual/en/us/fly/travel/airport/maps.html (last visited Oct. 2, 2020).

[3] Plaintiffs also reference *Ghaderi v. United Airlines, Inc.*, 136 F. Supp. 2d 1041, 1048 (N.D. Cal. 2001), in which a district court found that United's principal place of business for purposes of diversity jurisdiction was California.  Yet here Plaintiffs allege that Defendant's principal place of business is Chicago, Illinois.  *See* Compl. ¶ 5.  Aside from *Ghaderi*, Plaintiffs do not proffer any other evidence to support the suggestion that United's principal place of business is in California.

United States District Court
Northern District of California

1    Court.  Defendant does not contest that the Court has jurisdiction over Plaintiff Vallarta and the

2    putative California class members' California claims.  Rather, the question before the Court is

3    whether specific jurisdiction is proper as to the *Connecticut* claims brought by *Connecticut*

4    resident Plaintiff Salmons.  As the Ninth Circuit has explained, "[p]ersonal jurisdiction must exist

5    for each claim asserted against a defendant." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*,

6    368 F.3d 1174, 1180 (9th Cir. 2004).  But Plaintiffs have not identified any link between this

7    forum and Plaintiff Salmons' claims.  Plaintiff Salmons is a Connecticut resident who purchased

8    travel insurance through Defendant's website and appears to have suffered all of her purported

9    injuries in Connecticut.  *See* Compl. ¶¶ 4, 43.  She also seeks to represent a class of plaintiffs who

10   reside in and purchased their travel insurance in Connecticut.  *Id.* at ¶¶ 53, 55.  Plaintiffs have not

11   explained how Plaintiff Salmons' claims nevertheless still arise out of Defendant's activities in

12   California.  That Defendant may have directed certain actions to the state of California simply has

13   no bearing on the harm Plaintiff Salmons allegedly suffered in Connecticut.

14          Plaintiffs do not cite a single case in which a Court found specific jurisdiction over a non-

15   forum resident, or a class of non-forum residents, proceeding under non-forum law based solely

16   on the defendant's activities directed to forum residents.  Nor does the Court find the exercise of

17   specific jurisdiction over Defendant as to Plaintiff Salmons' claims under Connecticut law proper

18   under these circumstances.  *Accord Maeda v. Pinnacle Foods Inc.*, 390 F. Supp. 3d 1231, 1246

19   (D. Haw. 2019) (dismissing the non-resident, named plaintiff's California state law claims where

20   she did not establish how her claims involving conduct in California arise out of the defendant's

21   contacts with Hawaii); *Chernus v. Logitech, Inc.*, No. CV 17-673(FLW), 2018 WL 1981481, at *6

22   (D.N.J. Apr. 27, 2018) (same).

23                        **iii.    Pendent Jurisdiction**

24          Lastly, Plaintiffs urge the Court to exercise pendent jurisdiction over Plaintiff Salmons'

25   claims.  The doctrine of pendent personal jurisdiction permits a court to exercise jurisdiction over

26   a defendant "with respect to a claim for which there is no independent basis of personal

27   jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the

28   same suit over which the court does have personal jurisdiction." *See Action Embroidery*, 368 F.3d

United States District Court
Northern District of California

at 1180.  In *Action Embroidery*, the Ninth Circuit recognized the doctrine, finding pendent jurisdiction appropriate over the plaintiffs' state law claims where the court had already found personal jurisdiction was proper over plaintiffs' federal antitrust claims against the same defendant.  *See id.*  Citing considerations of "judicial economy, avoidance of piecemeal litigation, and overall convenience of the parties," the Ninth Circuit reasoned that "[w]hen a defendant must appear in a forum to defend against one claim, it is often reasonable to compel that defendant to answer other claims in the same suit arising out of a common nucleus of operative facts."  *Id.* at 1181.  In any event, the Ninth Circuit left the decision whether to exercise pendent jurisdiction to the district court's discretion.  *See id.*

Here, Plaintiffs ask the Court in its discretion to apply pendent jurisdiction over a non-forum resident's claims brought under non-forum law.  Plaintiffs contend that Plaintiff Salmons' claims arise out of a common nucleus of operative facts with those of Plaintiff Vallarta—namely, that Defendant failed to disclose on its website that it received a portion of the travel insurance fee from the third-party insurers.

In *Action Embroidery*, the Ninth Circuit noted that "[p]endent personal jurisdiction is typically found where one or more federal claims for which there is nationwide personal jurisdiction are combined in the same suit with one or more state or federal claims for which there is not nationwide personal jurisdiction."  368 F.3d at 1180–81.  This is consistent with the Supreme Court's explanation that "[p]endent jurisdiction, in the sense of judicial power, exists whenever there is a claim 'arising under (the) Constitution, the Laws of the United States, and Treaties made' . . . and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'"  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *see also Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 421 (9th Cir. 1991) ("Pendent jurisdiction exists where there is *a sufficiently substantial federal claim* to confer federal jurisdiction, and a common nucleus of operative fact between the state and federal claims."  *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 421 (9th Cir. 1991) (emphasis added).

Here, in contrast, Plaintiffs contend that the Court has diversity jurisdiction under the Class

Action Fairness Act ("CAFA").  *See* Compl. at ¶ 6.  There is therefore no federal claim to which Plaintiff Salmons' claims could relate.  Nevertheless, Plaintiffs rely on a single case in which a district court extended the pendent personal jurisdiction doctrine to out-of-state plaintiffs in a putative nationwide class action.  *See Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 859–62 (N.D. Cal. 2018), *order clarified*, No. 16-CV-07244-EMC, 2018 WL 1156607 (N.D. Cal. Mar. 5, 2018 ("*Sloan I*").  In *Sloan I*, the court reasoned that because the defendant already was before the court to defend against the in-state plaintiffs' claims, the additional burden of defending against the out-of-state plaintiffs' claims was de minimis.  *See Sloan I*, 287 F. Supp. 3d at 860 ("[T]he exercise of personal jurisdiction over the non-resident Plaintiffs' claims in this case will impose only a de minimis burden on [the defendant] . . . Those new claims overlap substantially with the claims (including federal claims) already before this Court, arising out of the same nucleus of operative facts.").

Even in granting pendent jurisdiction over the claims initially, the *Sloan I* court acknowledged "it is by no means clear whether *Action Embroidery's* pendent personal jurisdiction doctrine extends categorically to claims brought by different plaintiffs" because *Action Embroidery* involved claims asserted by the same plaintiffs against the same defendant.  *Id.* at 861.  Moreover, the court in *Sloan* later *denied* pendent jurisdiction over the same claims in a subsequent order.  *See Sloan v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2019 WL 6612221, at *5 (N.D. Cal. Dec. 5, 2019) ("*Sloan II*").  The court in *Sloan II* explained that it had "premised much of its decision [to grant pendent jurisdiction] on the existence of federal question jurisdiction [as to the other claims]," but that since its decision in *Sloan I* "[i]t has since become clear that there is no federal question furnishing federal question jurisdiction."  *See Sloan II*, 2019 WL 6612221, at *7.  The court then noted that "nearly every court considering the issue has concluded pendent party jurisdiction cannot be exercised by a federal court sitting in diversity," and declined to extend the doctrine.  *Id.* at *9 (collecting cases).

Even assuming the Court had the discretion to apply pendent jurisdiction under these circumstances, the Court declines to do so given the novel application that Plaintiffs propose.  *Accord Sloan II*, 2019 WL 6612221, at *9–10; *Maeda*, 390 F. Supp. 3d at 1247; *Reitman v.*

*Champion Petfoods USA, Inc.*, No. CV181736DOCJPRX, 2018 WL 4945645, at *6 (C.D. Cal. Oct. 10, 2018); *cf. Allen v. ConAgra Foods, Inc.*, No. 3:13-CV-01279-WHO, 2018 WL 6460451, at *6 (N.D. Cal. Dec. 10, 2018), *on reconsideration*, No. 3:13-CV-01279-WHO, 2019 WL 5191009 (N.D. Cal. Oct. 15, 2019) ("If due process were to allow a federal court to assert personal jurisdiction over a purely state law cause of action when a state court could not do the same, problematic dis-uniformity could result.").  To the extent Plaintiffs are concerned about the implications of piecemeal litigation, they may litigate the California and Connecticut claims on behalf of a nationwide class in Illinois or Delaware, because, as Plaintiffs allege, Defendant is a Delaware corporation with its principal place of business in Illinois.[4]  *See* Compl. at ¶ 5.

*     *     *

Plaintiffs have not argued that given the opportunity to amend, they could provide additional factual allegations such that general or specific jurisdiction would be appropriate as to Plaintiff Salmons' claims under Connecticut law.  Accordingly, the Court **DISMISSES** Plaintiff Salmons' claims **WITHOUT LEAVE TO AMEND**.

### B.    Personal Jurisdiction over Nonresident, Absent Class Members

Relatedly, Defendant contends that the Court lacks personal jurisdiction over the proposed nationwide class and Connecticut subclass.  Relying on the Supreme Court opinion in *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017), Defendant argues that personal jurisdiction is improper as to plaintiffs who are not residents of California and that the nationwide and Connecticut class allegations should therefore be stricken.  In *Bristol-Myers*, the Supreme Court held that a California state court lacked specific jurisdiction over the corporate defendant as to the claims asserted against it by non-forum residents in a mass tort action.  *See* 137 S. Ct. at 1782.  Specifically, the Court reasoned that the nonresidents' suit was not sufficiently connected to the forum because the nonresidents did not allege that they had bought or been injured by the defendant's product in the forum or that the defendant created or manufactured the product in the forum.  *Id.* at 1781–82.  Defendant argues that similar reasoning should apply here to prevent

---

[4] Indeed, a similar case against Defendant was already filed and remains pending in the Northern District of Illinois.  *See Flores v. United Airlines*, No. 1:18-cv-6571 (N.D. Ill.).

United States District Court
Northern District of California

1    allegations against Defendant by any plaintiffs who purchased travel insurance outside of

2    California.

3         As the parties acknowledge, whether *Bristol-Myers* applies to federal class actions remains

4    an open question. *See, e.g.*, *Snarr v. Cento Fine Foods Inc.*, No. 19-CV-02627-HSG, 2019 WL

5    7050149, at \*7 (N.D. Cal. Dec. 23, 2019).  Nevertheless, as the Court has previously explained,

6    most "[c]ourts addressing this precise argument have found that *Bristol-Myers* does not extend to

7    absent class members." *Id.*  The Court sees no reason to deviate from its prior holding.  At this

8    early stage of the litigation, no class has been certified, and thus it would be premature to

9    determine whether this Court has jurisdiction over Defendant with respect to the claims of any

10    absent class members prior to class certification.  The Court therefore **DENIES** Defendant's

11    motion to dismiss the absent class members' claims for lack of personal jurisdiction.

12      **C.**     **Motion to Dismiss**

13         Defendant next argues that all of Plaintiffs' causes of action are preempted by the Airline

14    Deregulation Act ("ADA"), and that Plaintiffs have not stated a plausible claim as to any of

15    Plaintiff Vallarta's California causes of action.

16        **i.**     **Preemption**

17         Defendant first contends that the ADA preempts Plaintiffs' state law claims.  *See* 49

18    U.S.C. §§ 1301 *et seq.*  The ADA prohibits "the States from enforcing any law 'relating to rates,

19    routes, or services' of any air carrier." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378–

20    79 (1992) (quoting 42 U.S.C. § 1305(a)(1)).  The Supreme Court has interpreted the term

21    "relating" to mean "*having a connection with or reference to* airline 'rates, routes, or services' are

22    preempted under 49 U.S.C. § 1305(a)(1)." *Id.* at 384 (emphasis added).  Part of the policy

23    rationale underlying the ADA is to encourage competition among airline carriers and promote "the

24    availability of a variety of adequate, economic, efficient, and low-priced services." *See* 49 U.S.C.

25    § 40101(a)(4), (a)(6), (a)(12).  Thus, the ADA is intended to preempt state laws that may "have the

26    forbidden significant effect upon fares." *Morales*, 504 U.S. at 388.  It does not, however, preempt

27    state law claims that "may affect [airline fares] in too tenuous, remote, or peripheral a manner."

28    *Id.* at 390 (quotation omitted).

United States District Court
Northern District of California

Defendant argues that Plaintiffs' claims relate to ticketing and airline rates because the need for travel insurance is "closely tie[d]" to "the fees that United charges for changing or cancelling a flight and the flight booking and ticketing process." *See* Dkt. No. 19 at 24.  The Court is not persuaded.  Plaintiffs allege that the travel insurance was provided by third parties— Allianz Global Assistance and Travel Guard Group, Inc.—and that Defendant's own website described it as being offered and billed as such.  *See* Compl. at ¶¶ 14, 24, 26, 29, 34–35.  Plaintiffs further allege that in the event a customer purchased and used the travel insurance, she would be billed separately by the third-party insurer.  *See id.* at ¶¶ 28, 36.  Customers were free to choose whether to purchase travel insurance, but at least as alleged, the decision to do so did not affect the rates that Defendant charged customers for flights.  *See, e.g., id.* at ¶¶ 22–36.  That customers may purchase this insurance during the ticketing process is simply too attenuated to have a connection to Defendant's "rates, routes, or services."  *See* 42 U.S.C. § 1305(a)(1).  In short, Plaintiffs' claims are not related to Defendant's airline rates or services, but rather to third-party travel insurance. Plaintiffs' state law claims are therefore not preempted by the ADA.  *Accord Flores v. United Airlines*, No. 1:18- cv-6571, 2019 WL 6716608, at *7 (N.D. Ill. Dec. 10, 2019); *Dolan v. JetBlue Airways Corp.*, 385 F. Supp. 3d 1338, 1345 (S.D. Fla. 2019).

### ii. California State Law Claims

Plaintiffs raise several state law claims against Defendant.  Although Plaintiffs do not specify under which states' laws their unjust enrichment, conversion, and fraudulent concealment claims arise, the Court assumes, as the parties have, that the claims are brought under California law.[5]

### a. Unfair Competition Law

California's UCL prohibits "unfair competition," which is defined as any "unlawful, unfair or fraudulent business act or practice . . . ."  Cal. Bus. & Prof. Code § 17200.  Plaintiffs allege a

---

[5] The Court has dismissed Plaintiff Salmon's individual claims under Connecticut law, and to the extent Plaintiffs raise non-California claims as part of the putative nationwide class, the Court **DISMISSES** all claims arising under the laws of states in which no named plaintiff resides for lack of standing.  *See Sponchiado v. Apple Inc.*, No. 18-CV-07533-HSG, 2019 WL 6117482, at *7 (N.D. Cal. Nov. 18, 2019) (collecting cases).

claim under both the UCL's "unlawful" and "fraudulent" prongs.  *See* Dkt. No. 29 at 6–9.  In response, Defendant contends that the UCL claim fails because Plaintiff does not have standing to bring a UCL claim; Defendant's conduct is permitted under the California Insurance Code; Defendant had no duty to disclose the compensation it received as part of the travel insurance transactions; and Plaintiff Vallarta was not injured as a result of Defendant's conduct.  The Court addresses each in turn.

### 1. Standing

As an initial matter, Defendant contends that Plaintiff Vallarta lacks standing to bring a UCL claim because she did not suffer any injury in fact.  *See* Dkt. No. 19 at 7, 9–10.  Throughout its briefing, Defendant appears to conflate Article III standing with statutory standing under the UCL.  *Compare id.* at 9–10, *with* Dkt. No. 42 at 6–7.  Though related, they are not interchangeable.  To establish Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016).  Whereas under the UCL, "standing extends to 'a person who has suffered injury in fact and has lost money or property as a result of the unfair competition.'" *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 321–22 (Cal. 2011) (citing Cal. Bus. & Prof. Code § 17204).  At bottom, Defendant's argument appears to be that Plaintiff Vallarta did not suffer an injury in fact.  *See* Dkt. No. 19 at 9–10; Dkt. No. 42 at 6–7.  For purposes of the following analysis, the Court therefore assumes that Defendant challenges both Article III and statutory standing.  This is not a substantial hurdle under either Article III or the UCL.  *See id.* at 324–25.  And "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* at 327 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

Here, Plaintiff Vallarta alleges in the complaint that "[h]ad United disclosed that the price of the travel insurance product on United's website incorporates an illegal commission paid to United . . . [she] would have not purchased the travel insurance and/or would have paid less for

United States District Court
Northern District of California

1   [alternative] travel insurance." Compl. at ¶ 41. She further alleges that there is comparable travel

2   insurance "available on the open market that is less expensive than the insurance offered on

3   United's website" and that the "discrepancy [in price] is attributable to the illegal commissions

4   that United receives from its customers." *See id.* at ¶ 42. Defendant responds that these

5   allegations are conclusory, and that even if they were sufficient to plead a loss, they do not

6   establish that Plaintiff Vallarta's injury resulted from Defendant's failure to disclose that it

7   received compensation for the travel insurance. *See* Dkt. No. 19 at 10–11.

8         The Court is not persuaded. Plaintiff has alleged that she would not have purchased

9   insurance through Defendant's website had she known the nature of Defendant's relationship with

10   the third-party insurance provider and that she could have purchased comparable, and less

11   expensive, insurance elsewhere. *See* Compl. at ¶¶ 41–42. She therefore alleges that she suffered

12   an economic injury from purchasing the insurance through Defendant's website so as to establish

13   both Article III and statutory standing. *See, e.g.*, *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104,

14   n.3 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013) ("[W]hen, as

15   here, Plaintiffs contend that class members paid more for [a product] than they otherwise would

16   have paid, or bought it when they otherwise would not have done so they have suffered an Article

17   III injury in fact." (quotation omitted)); *accord Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583,

18   1591 (Cal. Ct. App. 2008) (finding plaintiff lacked standing under the UCL where "they d[id] not

19   allege they could have bought the same insurance for a lower price either directly from the insurer

20   or from a licensed agent"). Neither Article III nor the UCL requires that Plaintiff allege the

21   specific insurance policies she would have purchased in the alternative.

22         Defendant relies heavily on a district court order in *Williamson v. Reinalt-Thomas Corp.*,

23   No. 5:11-CV-03548-LHK, 2012 WL 1438812, at *8 (N.D. Cal. Apr. 25, 2012). But *Williamson*,

24   in addition to being nonbinding, does not compel a contrary conclusion. In *Williamson*, the

25   plaintiff purchased a set of tires from Defendant, and alleges that he was not told about a service

26   fee that was included in the tire purchase for disposing of his old tires. *See id.* at *1. The plaintiff

27   alleged "that he *could* have purchased tires from a competitor at a lower price or he *could* have

28   avoided the fee by disposing of the tires himself." *Id.* at *8 (emphasis added). The court

concluded that these were merely "hypothetical allegations" that could not establish standing. *See id.* As noted above, however, Plaintiff Vallarta did not frame her allegations as merely hypothetical. Instead, she stated that she "*would* have not purchased the travel insurance and/or would have paid less for [alternative] travel insurance." Compl. at ¶ 41 (emphasis added). The Court finds it sufficient that Plaintiff Vallarta has alleged that (1) comparable insurance alternatives existed; and (2) she would have purchased one of them in the absence of Defendant's alleged omissions. Defendant may disagree with these allegations, and the Court definitely shares Defendant's skepticism of Plaintiff Vallarta's claim that she did not receive what she paid for, but the Court accepts the allegations in the complaint as true for purposes of the motion to dismiss. It will be for the factfinder to determine whether such allegations are ultimately persuasive.

### 2. Illegal Conduct

Defendant next argues that it is statutorily authorized as a "travel retailer" under the California Insurance Code to "receive compensation" for offering and selling travel insurance on behalf of third-party travel insurance providers. *See* Dkt. No. 42 at 2 (citing Cal. Ins. Code § 1754(b)). Consequently, Defendant urges, there is nothing illegal about its conduct in this case and Plaintiffs cannot establish their prima facie case. *Id.* In response, Plaintiffs concede that under § 1753(b)(1), Defendant may offer and disseminate information about travel insurance. *See* Dkt. No. 29 at 6–8. But Plaintiffs argue that Defendant went further and not only disseminated information, but also *solicited* insurance contracts for these third-party insurance providers. *Id.* Plaintiffs argue that solicitation is a distinct concept under the California Insurance Code that is not expressly permitted by travel retailers under § 1753(b)(1). *Id.* This dispute between the parties therefore turns on the meaning of California Insurance Code § 1754(b) and the permissible conduct of travel retailers.[6]

In support of their argument, Plaintiffs compare the general definition of "transact" in the

---

[6] To the extent Plaintiffs suggest that the Court's consideration of § 1754(b) is inappropriate at the motion to dismiss stage, the Court disagrees. Plaintiffs' theory of liability under the UCL is premised, at least in part, on the idea that Defendant's conduct was illegal under the California Insurance Code. *See* Compl. at ¶¶ 76–78. The meaning of the California Insurance Code is thus squarely at issue in considering whether Plaintiffs have stated a claim upon which relief can be granted under Rule 12(b)(6).

Insurance Code under § 35 with the definition of "transact" under § 1753(b) for travel retailers.

*See id.* Under § 35, "transact" is defined as:

> (a) *Solicitation*.
> (b) Negotiations preliminary to execution.
> (c) Execution of a contract of insurance.
> (d) Transaction of matters subsequent to execution of the contract and arising out of it.

Cal. Ins. Code § 35 (emphasis added).  Under § 1753(b), "transact," "when engaged in by a travel retailer," is defined as:

> (1) Offering and disseminating information to a prospective or current policyholder on behalf of a limited lines travel insurance agent, including brochures, buyer guides, descriptions of coverage, and price.
>
> (2) Referring specific questions regarding coverage features and benefits from a prospective or current policyholder to a limited lines travel insurance agent.
>
> (3) Disseminating and processing applications for coverage, coverage selection forms, or other similar forms in response to a request from a prospective or current policyholder.
>
> (4) Collecting premiums from a prospective or current policyholder on behalf of a limited lines travel insurance agent.
>
> (5) Receiving and recording information from a policyholder to share with a limited lines travel insurance agent.

Cal. Ins. Code § 1753(b).

Plaintiffs argue that "offering and disseminating information" about travel insurance, as permitted under § 1753(b), is more limited than "solicitation" under § 35, and that Defendant crossed that line by (1) "urging consumers to purchase travel insurance," including by highlighting the risks of traveling without coverage, Compl. at ¶¶ 24, 34; and (2) requiring consumers to affirmatively decide whether to purchase travel insurance before completing their ticket purchase on Defendant's website, *id.* at ¶¶ 25, 27.  *See* Dkt. No. 29 at 6–8.  Defendant, in turn, argues that its website merely disseminates information and is, in effect, an electronic brochure or buyer guide offering information about third-party travel insurance.  *See* Dkt. No. 42 at 2–3.

United States District Court
Northern District of California

United States District Court
Northern District of California

1       Despite Plaintiffs' urging, the Court is not persuaded that there is a meaningful distinction

2  between offering information about insurance and soliciting insurance contracts.  The Court

3  interprets California statutes in accordance with California principles of statutory construction.

4  *See Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1126 (9th Cir. 2005).  When

5  interpreting California law, the Court must "ascertain the intent of the Legislature so as to

6  effectuate the purpose of the law."  *State Farm Mut. Auto. Ins. Co. v. Garamendi*, 32 Cal. 4th

7  1029, 1043 (Cal. 2004) (quotation omitted).  "In determining such intent, a court must look first to

8  the words of the statute themselves, giving to the language its usual, ordinary import and

9  according significance, if possible, to every word, phrase and sentence in pursuance of the

10  legislative purpose."  *Id.* (quotation omitted).  The Court may not, however, consider the statutory

11  language in isolation.  *Id.*  Rather, the Court must "read every statute with reference to the entire

12  scheme of law of which it is part so that the whole may be harmonized and retain effectiveness."

13  *Id.* (quotation omitted).

14       Here, Plaintiffs devote substantial time in their opposition brief explaining that

15  "solicitation" is not explicitly enumerated in § 1753(b).  But critically, Plaintiffs do not grapple

16  with the actual text of § 1753(b).  In passing, they suggest that "offering and disseminating

17  information" about third-party travel insurance is somehow different than solicitation because

18  "'[s]oliciting' involves marketing and qualitative assessments."  *See* Dkt. No. 29 at 7.  But

19  § 1753(b)(1) provides a non-exhaustive list of what constitutes "offering and disseminating

20  information" under the statute.  And it states that this "include[s] brochures, buyer guides,

21  descriptions of coverage, and price."  *See* Cal. Ins. Code § 1753(b)(1).  In the ordinary course,

22  brochures and buyer guides are considered marketing materials.  Meriam-Webster defines

23  "brochure" as a "pamphlet" or "booklet," "especially[] one containing descriptive or *advertising*

24  *material*."  *See Merriam-Webster.com Dictionary*, https://www.merriam-

25  webster.com/dictionary/brochure (last visited Oct. 2, 2020) (emphasis added).  And "advertising,"

26  in turn, is "the action of calling something to the attention of the public especially by paid

27  announcements."  *See id.*, https://www.merriam-webster.com/dictionary/advertising (last visited

28  Oct. 2, 2020).  The Court need not parse the exact scope of what is permissible under § 35, as it is

1    not in tension with § 1753(b).  And in any event, the specific provision governing travel retailers

2    in § 1753(b) would apply over any general definition in this case.  *See, e.g.*, *San Francisco*

3    *Taxpayers Assn. v. Bd. of Supervisors*, 2 Cal. 4th 571, 577 (Cal. 1992) ("A specific provision

4    relating to a particular subject will govern in respect to that subject, as against a general provision,

5    although the latter, standing alone, would be broad enough to include the subject to which the

6    more particular provision relates.").  Thus, regardless of what "solicitation" may encompass under

7    § 35, travel retailers are permitted to disseminate advertising material under § 1753(b).[7]

8         This is precisely what Plaintiffs have alleged that Defendant did in this case.  Plaintiffs

9    allege that "[b]efore the customer completes their [ticket] purchase, [Defendant's] website requires

10   the customer to make an election regarding purchasing a travel-insurance policy with a third-party

11   insurance provider."  *See* Compl. at ¶ 19.  The website also included information, such as:

12        • "[A] quote from Frommer's noting that '[i]t's wise to always consider a travel

13            protection plan to cover your trip costs from the unexpected'; the 'Top 4 reasons

14            you need travel insurance'; and an 'Important Fact' noting the high out-of-pocket

15            costs associated with medical emergency transportation."  *Id.* at ¶ 24.

16        • "Don't miss out!" and a subsequent explanation that the third-party travel insurance

17            coverage included "[f]light refund if you can't travel for a covered reason," as well

18            as "[c]overage for flight cancellations and missed connections."  *See id.* at ¶ 31.

19        • "[A] reminder not to 'ignore the unexpected,' followed by a list of unexpected

20            events that may prohibit a trip.  This is in turn followed by a statement that reads,

21            'Over 10 million travelers trust Travel Guard plans for travel insurance.'"  *See id.* at

22            ¶ 34.

23   Plaintiffs describe this information as "marketing language."  *See id.* at ¶ 21.  Just as a brochure

24   would, Defendant's website offered information about the nature of the third-party travel

25   insurance and what it covered, as well as instances in which it may be needed.  Plaintiffs thus fail

26

27   ─────────────────
     [7] Plaintiffs' reliance on the definition of "solicitation" as discussed in *Friedman v. AARP, Inc.*, 855

28   F.3d 1047, 1050 (9th Cir. 2017), in the context of health insurance, is thus inapposite as the case
     did not consider § 1753(b) or travel retailers at all.

United States District Court
Northern District of California

1    to state a claim under the UCL's "illegal conduct" prong.

### 3.  Fraudulent Conduct

Defendant also argues that Plaintiffs cannot raise an argument under the fraudulent prong of the UCL because Defendant was under no duty to disclose its compensation from the third-party insurers.  To state a claim under the fraudulent prong of the UCL, Plaintiffs must allege that Defendant's conduct is "likely to deceive" a "reasonable consumer."  *See Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citing California law).  Plaintiffs allege that "[r]easonable consumers purchasing the travel insurance from [Defendant] were deceived into believing that their payments were for the premiums of the travel insurance but instead actually include kickbacks to [Defendant], who has no license solicit, negotiate or effect contracts of insurance in the State of California."  *See* Compl. at ¶ 79.  As discussed above, however, § 1753(b) permits travel retailers to offer and disseminate information about third-party travel insurance.  *See* Cal. Ins. Code § 1753(b).  Plaintiffs do not allege how Defendant's conduct in offering the insurance on its website was nevertheless fraudulent.

In its opposition, Plaintiffs suggest that the fraudulent act was an omission:  the lack of disclosure about the money Defendant may have received from the travel insurance sales.  *See* Dkt. No. 29 at 8–10.  Plaintiffs further argue that because the nature of Defendant's financial arrangement was within Defendant's exclusive knowledge, it had a duty to disclose this arrangement.  *See id.* at 10.  Under California law, "[a] failure to disclose a fact can constitute actionable fraud or deceit . . . when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff."  *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255 (Cal. Ct. App. 2011), *as modified* (Dec. 28, 2011).  Plaintiffs must, accordingly, establish that Defendant failed to disclose a "material fact."  They have not done so.

Plaintiffs merely allege in conclusory terms that "[r]easonable consumers purchasing the travel insurance from [Defendant] were deceived into believing that their payments were for the premiums of the travel insurance but instead actually include kickbacks to [Defendant]."  *See* Compl. at ¶ 79.  And that "[h]ad Plaintiffs been aware that a portion of the costs of their travel insurance was being used to fund an illegal kickback to [Defendant], they would not have paid for

the travel insurance and/or would have paid less for travel insurance." *See* Compl. at ¶ 47.  This is insufficient.  Calling payments to Defendant "illegal kickbacks" does not make them so.[8]  And when read without this inflammatory language, Plaintiffs' complaint simply alleges that Defendant received compensation for offering third-party insurance on its website.  Plaintiffs make no effort, either in the complaint, or in opposition, to explain *why* the failure to explain this to customers would be material to the purchase of the third-party travel insurance.  As alleged, Plaintiffs appear to have paid no more and no less than what Defendant offered on its website and what Plaintiffs agreed to pay for their travel insurance.  *See, e.g.*, *id.* at ¶¶ 24, 28, 32, 36.  And the price of travel insurance "is a price offered or set by the insurer, not [Defendant.]"  *See id.* at ¶ 49.

Plaintiffs have also failed to explain why a reasonable consumer would not assume, even in the absence of a warning on its website, that Defendant may be compensated for products sold on its website.  Recently, a court dismissed similar allegations against Defendant in the Northern District of Illinois.  *See Flores v. United Airlines*, 426 F. Supp. 3d 520, 525 (N.D. Ill. 2019).  As the court aptly explained:

> Every day in this country, individuals engage in transactions that involve commissions.  Often, when a person sells a house, a real estate agent earns a commission.  Often, when a person buys a car or a company buys supplies, the salesperson earns a commission.  Often, when a person buys clothing at a store, such as Nordstrom, the salesperson earns a commission.  Plaintiff seems to think the lack of disclosure makes the commission somehow nefarious, but the Court does not see how.  Nordstrom does not post at its counters signs warning customers that its sales staff earns commission on sales, yet the Court is not aware of any cases holding that such practices constitute fraud or are unfair to customers.  A wise consumer assumes a salesperson in a store is working on commission and that the owner of a website gets a share of the sale of products sold on its website.

*Id.*  The Court agrees.  A claim may only survive a motion to dismiss if a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  But here, the Court finds that even drawing all

---

[8] The Court notes that Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard where fraud is an essential element of a claim, so Plaintiffs' bare allegations are particularly deficient in this context.  *See* Fed. R. Civ. P. 9(b); *see also Vess*, 317 F.3d at 1107.

United States District Court
Northern District of California

reasonable inferences in Plaintiffs' favor, a reasonable consumer would not be deceived by Defendant's conduct.  Accordingly, Plaintiffs have also failed to state a claim under the UCL's "fraudulent" prong.

### b.  Unjust Enrichment

Defendant next argues that Plaintiffs fail to state an independent cause of action for unjust enrichment.  The Ninth Circuit "has construed the common law to allow an unjust enrichment cause of action through quasi-contract." *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016); *see also Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) ("When a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." (quotations omitted)).  "To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Capital Partners*, 828 F.3d at 1038.  As with Plaintiffs' UCL claim, their unjust enrichment claim is premised on the idea that Defendant "obtained [money from Plaintiffs] through deceptive representations" and that accepting compensation "was otherwise illegal." *See* Compl. at ¶ 70.  But for the reasons discussed above, the Court finds that Plaintiffs have not adequately alleged that Defendant engaged in any illegal or fraudulent conduct.

### c.  Conversion

Defendant also challenges Plaintiffs' conversion claim.  Conversion is "the wrongful exercise of dominion over the property of another." *Lee v. Hanley*, 61 Cal. 4th 1225, 1240 (Cal. 2015) (quotations omitted).  To establish a claim for conversion, a plaintiff must plead:  "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Id.* (quotations omitted).  Plaintiffs' allege that they "have an ownership right to the amounts of their payments illegally diverted to [Defendant] as a kickback/commission" for the trip insurance policies purchased through its website. *See* Compl. at ¶¶ 94–95.  However, "the law is well settled that there can be no conversion where an owner either expressly or impliedly assents to or ratifies the taking, use or disposition of his property." *See, e.g.*, *Farrington v. A. Teichert & Son, Inc.*, 59 Cal. App. 2d 468,

21

474 (Cal. Ct. App. 1943) (quotations omitted).

Even as alleged, the consumer had the choice whether to purchase travel insurance on Defendant's website. *See* Compl. at ¶¶ 22–36. And only if the consumer decided to purchase travel insurance was he or she charged for it. *See id.* Plaintiffs, therefore, gave their consent, and there are no allegations that Plaintiffs failed to receive the purchased insurance policy. Moreover, the third-party travel insurer, and not Defendant, ultimately billed the consumer for the insurance policy. *See id.* at ¶¶ 14, 28, 36, 38. Defendant did not take possession of these funds, but rather "the insurer would then pay" Defendant. *See id.* at ¶ 14. And again, to the extent Plaintiffs' claim is premised on Defendant's failure to disclose that it was compensated by these insurers, the Court rejects this claim for the reasons already explained.

### d.  Fraudulent Concealment

Lastly, Defendant challenges Plaintiffs' cause of action for fraudulent concealment. As with Plaintiffs' claim under the UCL that Defendant engaged in fraudulent business practices, Defendant contends that Plaintiffs have not alleged that (1) Defendant had any duty to disclose the payments it received as part of the travel insurance; or (2) Plaintiffs suffered any damage as a result. As discussed above in Section III.C.ii.a.3, the Court finds that Plaintiffs have not adequately alleged that Defendant had a duty to disclose that it received money for offering third-party travel insurance on its website because Plaintiffs have not established that such information would be material.

## IV.  CONCLUSION

Accordingly, the Court **GRANTS IN PART** Defendant's motion to dismiss **WITHOUT LEAVE TO AMEND** as to Plaintiff Salmon's claims; **DENIES** Defendant's motion to dismiss Plaintiff Vallarta's UCL claim under the "unfairness" prong;[9] and otherwise **GRANTS** Defendant's motion to dismiss Plaintiff Vallarta's substantive claims in their entirety. Given the nature of the deficiencies identified, the Court is not certain how Plaintiffs could possibly plead

---

[9] The Court notes that other than raising an argument that Plaintiff Vallarta lacked standing to bring this claim, Defendant did not substantively challenge the "unfairness" prong. *See* Dkt. No. 9–10.

United States District Court
Northern District of California

additional facts to state claims that would be plausible on their face.  Still, the Court will provide Plaintiffs one opportunity to file any amended complaint within 21 days of the date of this order if they may do so consistent with their Rule 11 obligations.  The Court further **SETS** a telephonic case management conference on November 3, 2020, at 2:00 p.m.  All parties, counsel, and members of the public and press may use the following dial-in information below to access the conference line:

**Dial In:**  888-808-6929

**Access Code:**  6064255

The parties shall also file a joint case management stated by October 27, 2020, and be prepared to discuss how to move this case forward efficiently.

**IT IS SO ORDERED.**

Dated:  10/2/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge